**TRAVELERS INDEMNITY COMPANY OF ILLINOIS,** Petitioner,

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF EMPLOYMENT SER-VICES,** Respondent

and

**Vertrans, Inc., Intervenor.**

No. 05–AA–1290.

District of Columbia Court of Appeals.

Argued March 20, 2007.

Decided July 9, 2009.

D. Stephenson Schwinn, with whom David B. Stratton, Washington, DC, was on the brief, for petitioner.

David A. Slacter, for intervenor.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, and Edward E. Schwab, Deputy Solicitor General at the time the statement was filed, filed a statement in lieu of brief for respondent.

Before WASHINGTON, Chief Judge, RUIZ, Associate Judge, and FARRELL, Senior Judge.*

RUIZ, Associate Judge:

Petitioner, Travelers Indemnity Company of Illinois ("insurer"), the workers' compensation insurance carrier for intervenor, Vertrans, Inc. ("employer"), seeks our review of the order of the Compensation Review Board ("CRB") dismissing the employer's appeal of an order issued by the Office of Workers' Compensation ("OWC"). The OWC had issued an order, at the insurer's request, adopting the recommendation of a Memorandum of Informal Conference ("Memorandum") issued by the Claims Examiner. In that Memorandum, the insurer was found not to have an obligation under the insurance contract to pay benefits to claimant; as a result, according to the Claims Examiner, benefits were payable by the employer. The CRB dismissed the employer's appeal for lack of jurisdiction, because there was no valid final order to review once the employer had rejected the Memorandum and filed an application for a formal hearing with the Office of Hearings and Adjudication ("OHA") at the D.C. Department of Employment Services ("DOES"). Because the CRB reasonably interpreted the regulations governing the procedures for informal conferences as terminating upon the filing of an application for a formal hearing, we affirm its decision to dismiss the appeal for lack of jurisdiction.

## I.

These proceedings arose out of a claim for workers' compensation benefits filed pursuant to the District of Columbia Workers' Compensation Act of 1979 (codified as amended in D.C.Code § 32–1501 to –1545 (2001)). Claimant Jerry Russell performed escalator maintenance work for the employer in the District of Columbia for over eight years.[1] In May 2002, claimant suffered an injury to his back, neck, and right shoulder while performing maintenance work which required lifting, pulling, and removing escalator steps which weighed 32 pounds each. Claimant sought medical treatment, and was diagnosed on May 10, 2002, with right trapezius syndrome and lower-back strain.

Claimant sought total temporary disability benefits from May 10, 2002, to the present and continuing. The employer conceded that claimant's injury was work-related, but it and the insurer disputed whether the insurance contract provided coverage for his claim. The insurer maintained that employer did not have workers' compensation coverage for injury related to work in the District of Columbia because employer's assigned risk policy for the period when the claim arose provided coverage only for employees in the state of Virginia.[2] Employer, on the other hand, argued that the policy covered the workers' compensation claim because claimant had been hired in Virginia and was working in D.C. on a temporary basis.

Claimant, the insurance company and the employer submitted their dispute to the Office of Workers' Compensation for resolution. On September 3, 2002, the Claims Examiner conducted an informal

---

* Judge Farrell was an Associate Judge at the time of the argument. His status changed to Senior Judge on January 23, 2009.

1. The eight-year period includes claimant's employment with Mid–America, employer's sister company.

2. According to the Memorandum, employer subsequently "obtained additional insurance from the carrier to include workers' compensation coverage in the District of Columbia."

conference among the parties. Applying the District of Columbia Workers' Compensation Act, and after evaluating the parties' contentions and documentary evidence, including the contract of insurance, the Claims Examiner issued a Memorandum dated September 24, 2002, in which she found that the claimant's employment was "localized principally in the District of Columbia," and that "claimant worked in, [and] the injury occurred in" the District. *See* D.C.Code § 32–1503(a) (2001). The Claims Examiner interpreted the insurance policy as covering only claims related to employment in Virginia. Thus, the Claims Examiner recommended that the employer—not the insurer—should be liable to pay Mr. Russell's disability claim.

The Memorandum contained a section titled "Appeal Rights," which stated that the parties had fourteen days to indicate whether they agreed or disagreed with the Claims Examiner's recommendation. If a party disagreed with the recommendation, it was required to file an application for a formal hearing with the OHA within thirty-four working days after the issuance of the Memorandum. If an application was not timely filed, the Memorandum would become final and binding on the parties.

On October 17, 2002, employer rejected the Claims Examiner's recommendation, and on November 13, 2002, it filed a timely application for a formal hearing. However, on February 4, 2003, the day before the hearing was scheduled, the employer withdrew the application. As a result, the application for a formal hearing was dismissed without prejudice and the case was remanded to OWC "for such further action as may be warranted."

On February 20, 2003, the insurer filed with OWC a "Motion to Enforce the Informal Conference Decision." The OWC granted the motion on March 25, 2003,

adopting the Memorandum of Informal Conference as the Final Order in this case.

Employer appealed the OWC's Final Order to the Compensation Review Board, which rendered its decision on October 7, 2005. The CRB dismissed the appeal on jurisdictional grounds without reaching the merits. It held that once the employer rejected the Claims Examiner's recommendation, the Memorandum was rendered null and void and the OWC, therefore, could not convert the Memorandum into a Final Order. Accordingly, the CRB concluded that it, in turn, lacked jurisdiction to resolve the issues raised by the appeal because there was no final decision to review. The insurer timely filed in this court for review of the CRB's decision.

Several months after the CRB's decision in this case, and while this appeal was pending, the CRB announced that it was conducting an *en banc* review of another case that raised substantially similar issues, *Gooden v. Nat'l Children's Ctr.*, CRB Nos. 03–137 & 03–142, 2006 WL 4583383, 2006 DC Wrk. Comp. Lexis 485 (Apr. 14, 2006). In *Gooden* the full CRB panel held that

> in the absence of express authority requiring or otherwise permitting remand to OWC, the dismissal of an Application for Formal Hearing neither reinvests OWC with jurisdiction over a previously filed claim [with OWC] nor reinvests a claims examiner with authority to enter a Final Order dispositive of the parties' right based upon a previously issued Memorandum of Informal Conference.

*Gooden*, slip op. at 7. In the *Gooden* opinion the CRB specifically referred to and reaffirmed (based on a different analysis, discussed *infra*) its prior disposition in this case dismissing the appeal for lack of

jurisdiction.[2]

## II.

■ This court must affirm an agency's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* D.C.Code § 2–510(a)(3)(A) (2001). We also defer to an agency's interpretation of a statute or regulation it is charged with implementing if it is reasonable in light of the language of the statute (or rule), the legislative history, and judicial precedent. *See Wash. Metro. Area Transit Auth. v. D.C. Dep't of Employment Servs.*, 825 A.2d 292, 294 (D.C. 2003). The CRB has, since February 5, 2005, replaced the Director of the Department of Employment Services "in providing administrative appellate review and disposition of workers' and disability compensation claims arising under" the D.C. Workers' Compensation Act. *Russell v. Vertrans, Inc.*, CRB No. 03–56, slip op. at 1 n. 1 (Oct. 7, 2005) (citing Administrative Policy Issuance No. 05–01 (Feb. 5, 2005) (implementing D.C.Code §§ 32–1521.01 & –1522 (2005))).[3]

The issue before this court, therefore, is whether to uphold the CRB's interpretation that the filing of an application for a formal hearing after a Memorandum of Informal Conference has been rejected—even if the application is later withdrawn—divests OWC of jurisdiction to enter a final order in a workers' compensation proceeding. We hold that the CRB's interpretation of the relevant regulations is reasonable and affirm its dismissal of the employer's appeal for lack of jurisdiction.

Under the Workers' Compensation Act, a claimant may obtain adjudication of a claim either by 1) requesting an informal conference with the Office of Workers' Compensation, or 2) directly filing an application for a formal hearing with the DOES Office of Hearings and Adjudication. *See Nat'l Geographic Soc'y v. D.C. Dep't of Employment Servs.*, 721 A.2d 618, 621–22 (D.C.1998). The regulations implementing such procedures are set forth in 7 DCMR § 219 (informal conference) and 7 DCMR § 220 (formal adjudication).

If a claimant chooses the informal route, OWC acquires jurisdiction over the matter. A Claims Examiner's recommendation becomes binding if the recommendation is not timely rejected within fourteen days and an application for a formal hearing is not timely filed within thirty-four days after the issuance of the recommendation. "Once an application for a formal hearing is filed, however, all informal procedures must be terminated." *Nat'l Geographic Soc'y*, 721 A.2d at 622 (citing 7 DCMR § 219.23). The DOES Office of Hearings and Adjudication then assumes exclusive jurisdiction over the workers' compensation claim.

On August 25, 2003, the Director of the Department of Employment Services (now the CRB) established an exception to this rule in *Sacko v. Radio Shack*, CRB No. 02–89, 2003 WL 22952723, *3, 2003 DC Wrk. Comp. Lexis 310, *8–9 (Aug. 25, 2003). The exception would be triggered by a party's voluntary dismissal of an application for a formal hearing, without the consent of the opposing party. In such circumstances, the Director stated, the Ad-

---

**2.** We stayed the briefing schedule in this case pending the outcome of the *Gooden* case before the full CRB.

**3.** We do not accord the same deference to the statutory interpretations of the Office of Administrative Hearings. *See Washington v.*

*D.C. Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C.2008) (noting that "the OAH is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies").

ministrative Law Judge's dismissal of the application for a formal hearing, however styled, must be with prejudice, and jurisdiction is reinvested in the Claims Examiner, including the authority to convert the original Memorandum of Informal Conference into a Final Order pursuant to the regulations. Specifically, the Director held in *Sacko*:

[W]hen a party to an informal workers' compensation proceeding files an Application for Formal Hearing and subsequently voluntarily dismisses that application, the presiding claims examiner in the proceeding is immediately reinvested with jurisdiction over the matter that he or she had prior to the filing of the subject Application for Formal Hearing. The voluntary dismissal of an Application for Formal Hearing may only be made with prejudice [if the opposing party does not consent to the requested dismissal]. A ruling to the effect is necessary to ensure that the implementing regulations are not utilized by a party to unfairly delay the resolution of a claim. Without such a ruling, a party could, in effect, vitiate 7 DCMR § 219.22 (1986) (i.e., making it impossible for a claims examiner's Memorandum of Informal Conference to ever become a Final Order by simply engaging in a cycle of filing an application for formal hearing and then subsequently withdrawing that application[)]. This instant holding is consistent with the humanitarian purposes of the Act and with the notion of orderly claim administration. *See 4934, Inc. v. District of Columbia Department of Employment Services,* 605 A.2d 50, 57 (D.C.1992); *Parodi v. District of Colum-*

bia Department of Employment Services, 560 A.2d 524, 526 (D.C.1989); *Ferreira v. Department of Employment Services,* 531 A.2d 651, 655 (D.C.1987).

*Id.* (footnote omitted).

Almost three years later, in *Gooden,* the CRB concluded *en banc* that the exception created in *Sacko* no longer obtained,[4] explaining that an application for a formal hearing "was not an appeal from OWC but instead an original action before the AHD [Administrative Hearings Division, or DOES Office of Hearings and Adjudication]." *Gooden,* slip op. at 5. Upon such application, the CRB noted, 7 DCMR § 219.23 "dictates" that "all informal procedures [before OWC] must be terminated," rendering the Claims Examiner's Memorandum "null and void." *Id.* at 6 (citing *Nat'l Geographic Soc'y,* 721 A.2d at 622). As a result, dismissal of an application for a formal hearing "cannot revive a previously issued Memorandum." *Id.* The CRB sought to dispel a "general misconception" that an application for a formal hearing is an appeal from OWC proceedings, "a major (albeit unstated) fallacy in *Boucary Sacko* leading to the Director's conclusion therein that the voluntary dismissal of the [application for a formal hearing] reinvested jurisdiction over the matter with the previously presiding claims examiner." *Id.* Instead, the CRB clarified, an application for a formal hearing is an alternative, original action that vests the DOES Office of Hearings and Adjudication with jurisdiction as "a *de novo*" matter. *Id.* Any subsequent dismissal of the application for a formal hearing "is to be treated as would a similar dismissal by a court of original jurisdiction." *Id.*[5] Cognizant of the concern that

---

**4.** Citing 7 DCMR § 255.7 and *Palmer v. George Washington Univ. Med. Ctr.,* CRB No. 02–64, OHA No. 01–61C (Jan. 23, 2006), the CRB noted that "as a prior decision of the Director, *Boucary Sacko* constitutes persua-

sive authority only." *Gooden,* slip op. at 7 n. 12.

**5.** The CRB noted that although dismissal of the proceeding before OHA does not reinstate

had led the DOES Director to announce the rule in *Sacko*, the CRB added that if the ALJ determines that withdrawal of an application for a formal hearing is tantamount to abuse of the claims process, the ALJ may dismiss the case with prejudice, provided the parties have a meaningful opportunity to be heard on the issue. *See id.* at 7. Any such dismissal is appealable to the CRB, and, ultimately, subject to petition for review by this court.

■ The insurer argues that in *Gooden*, as in this case, the CRB misinterpreted the regulations that implement the informal proceedings of a workers' compensation claim, and undermined the humanitarian purposes of the Workers' Compensation Act. We conclude that the CRB's interpretation of the regulations is reasonable, *see Wash. Metro. Area Transit Auth.*, 825 A.2d at 294, and affirm the CRB's decision.

As a preliminary matter, we note that in deciding this case before *Gooden* expressly overruled *Sacko*, the CRB noted that it was diverging from the rule prescribed in *Sacko*, stating that "to the extent that this decision is in any way inconsistent with any language contained in the Director's Decision and Remand Order in *Sacko v. Radio Shack*, . . ., the policy contained in this decision is controlling." *Russell*, slip op. at 3. Sitting *en banc* in *Gooden*, the CRB reaffirmed its holding in this case dismissing the appeal but disagreed "with the analysis by which the Review Panel in [*Russell*] reached this conclusion." Slip op. at 6. Therefore, although *Gooden* was

decided after the CRB decided this case, in reviewing the CRB's interpretation we look to its more comprehensive and current analysis in addressing the identical issue in this case.[6]

■ In short, when it decided this case, the CRB panel had reasoned that it was a party's rejection of the Claims Examiner's Memorandum that rendered it null and void and incapable of being revived upon dismissal of an application for a formal hearing, *see Russell*, slip op. at 3, but sitting *en banc* in *Gooden*, the CRB reasoned that it is not only a party's rejection of the Memorandum but the application for a formal hearing that renders the Memorandum null and void. *See Gooden*, slip op. at 6. The CRB explained its changed analysis by noting that under 7 DCMR § 219.22, a Claims Examiner's Memorandum

> becomes final, and thus subject to conversion to a Final Order, upon lapse of 34 working days from the date of the Memorandum's issuance *if no AFH [application for a formal hearing] is within that period filed.* Thus, a party could reject a Memorandum pursuant to § 219.20 yet, if no AFH is timely filed, the Memorandum would nevertheless become final by operation of law upon lapse of the 34–day period.

*Gooden*, slip op. at 6. The CRB's interpretation is consistent with the language of the regulation, which states unequivocally that "All informal procedures *shall terminate* when the application for formal hear-

jurisdiction in the Claims Examiner, the regulations do provide specific authority for OHA to remand a matter to OWC in certain situations, *i.e.,* where there has been a settlement, *see* 7 DCMR § 226.1, or where the parties wish to mediate, *see* 7 DCMR § 219.2.

**6.** As noted, the parties have addressed the CRB's *Gooden* decision in their briefs to the

court in this case. In addition, the employer states in its brief that it believes the insurer filed a brief *amicus curiae* before the CRB in the *Gooden* case. The insurer's reply brief does not address the point; the CRB's *Gooden* opinion does not reflect participation by any *amicus.*

ing is filed." 7 DCMR § 219.23 (emphasis added); *see Nat'l Geographic Soc'y*, 721 A.2d at 622; *see also Hansborough v. Wash. Metro. Transit Auth.*, H & AS No. 86–601A, 1988 WL 1022946, *1 n. 1, 1988 D.C. Wrk. Comp. Lexis 35, *1 n. 1 (June 2, 1988) (disallowing introduction into evidence at formal hearing of Memorandum of Informal Conference). Thus, regardless of whether a party later withdraws its application for a formal hearing before the OHA, the regulation reasonably can be interpreted as identifying the initial filing of an application for a formal hearing as the point when the informal procedures "terminate." 7 DCMR § 219.23. It follows logically, as the CRB held, that the OWC, which conducts the informal proceedings, loses jurisdiction over the matter once a party decides to have a claim adjudicated by an ALJ through a formal hearing by filing an application. Noting that proceedings before the OWC are "informal and non-adjudicatory in nature"—without testimony under oath, cross-examination or a recorded transcript—the CRB explained in *Gooden* that "[t]he Memorandum of Informal Conference ... is, in effect, a recommendation for settlement— which the parties can either accept or reject," and therefore, such Memorandum acquires the force of law only if it is "accepted by the parties." Slip op. at 5–6. This view is fully consonant with the regulations, which provide that "participation by interested parties in [informal] conferences shall be voluntary," 7 DCMR § 219.2, and gives either party the right, within fourteen days of the Memorandum of Informal Conference, to "agree or disagree with the terms of the memorandum," *id.* § 219.20, and to file, within thirty-four days, an application for a formal hearing. *Id.* § 219.22. Once those two conditions in the regulations are met, the CRB concluded, the Memorandum is "null and void." *Gooden*, slip op. at 6.

We perceive no unfairness in this approach that overcomes our deference to the agency's interpretation. The insurer argues that the prevailing party in an informal proceeding is prejudiced if by merely filing—and then withdrawing—an application for a formal hearing an opposing party can effectively nullify the Claims Examiner's Memorandum and divest the OWC of authority.[7] But, as the CRB has explained, the Memorandum's legal force derives from its acceptance by the parties.

The insurer's challenge to the CRB's interpretation is largely based on policy considerations, invoking the humanitarian purposes of the Workers' Compensation Act. For example, the insurer argues that unless the OWC's jurisdiction is continued after a formal hearing application is withdrawn, there will be little incentive to use the OWC's informal proceedings, which are more cost-effective and accessible to claimants, and a necessary prerequisite for a claimant's entitlement to receive attorney's fees. *See* D.C.Code § 32–1530(b) (2001); *Nat'l Geographic Soc'y*, 721 A.2d at 622. These policy-based concerns cannot, however, trump the clear language of the regulations. *See Nat'l Geographic Soc'y*, 721 A.2d at 622. Moreover, the cost and time advantages of the informal OWC route remain as incentives for most parties. The party who benefits from the recommendation in a Memorandum is not left without recourse by the other party's withdrawal of an application for a formal hearing. Where a case is dismissed without prejudice, the party opposing dismissal of an application can continue the proceeding by filing its own application for a for-

---

**7.** The potential for this type of abusive practice is what led the DOES Director to announce the rule in *Sacko*. *See Gooden*, slip op. at 7.

mal hearing.[8] In the case—not the norm, one would hope—that a party unfairly uses the system, causing harm to the other party, *Gooden* expressly authorized ALJs to impose sanctions where appropriate by dismissing with prejudice, with the result of an adverse decision. Dismissal with prejudice is "the functional equivalent of a final decision on the merits, . . . . with the preclusive effect of *res judicata.* . . ." *Gooden,* slip op. at 8 (citing *Thornton v. Norwest Bank of Minn.,* 860 A.2d 838, 841 (D.C.2004)). It remains for the administrative law judges of the OHA and the CRB to apply the rules enunciated in *Gooden* in a fair manner consistent with the humanitarian purposes of the Workers' Compensation Act.

### III.

█ Finally, the insurer argues that, regardless of its merit, the rule announced by the CRB in this case, and reaffirmed in *Gooden,* should not have been applied retroactively to this case.[9] We hold that the CRB's decision to apply the new rule to this case was not arbitrary. *See Retail, Wholesale & Dep't Store Union v. Nat'l Labor Relations Bd.,* 151 U.S.App. D.C. 209, 219, 466 F.2d 380, 390 (1972) (noting that a retroactivity/prospectivity determination is "a question of law").

In *Reichley v. D.C. Dep't of Employment Servs.,* 531 A.2d 244 (D.C.1987), this court addressed whether an agency adjudication resulting in a new rule of law should be applied retroactively or prospectively, and identified four factors to be considered:

(1) whether the decision is a "clear break with the past" precedent or was foreshadowed by trends in the law;

(2) the extent to which the party against whom the new decision is invoked reasonably relied upon the old rule, including the nature and degree of the burden a retroactive decision would impose on that party;

(3) the importance of rewarding the real party in interest, if any, who initiated the agency's changed decision; and

(4) whether administering both the new and the old rules for some period of time would pose a severe administrative burden or otherwise interfere with a significant statutory interest.

*Id.* at 251.

Applying the *Reichley* factors to this case, we conclude that the CRB did not err in applying its new interpretation of 7 DCMR § 219.20 and § 219.23. In *Gooden,* the CRB observed that "[u]p until *Boucary Sacko,* the Agency had interpreted its governing regulations as divesting OWC of jurisdiction over a claim for benefits once a party rejected the Memorandum of Informal Conference and filed and Application for Formal hearing." *Gooden,* slip op. at 5.[10] Although the CRB created an exception to that practice in *Sacko,* in February 2003—when the employer withdrew its ap-

---

8. Any such filing would, of course, be subject to timeliness requirements. *See Gooden,* slip op. at 8. A party concerned that the applicant might withdraw the application at the last moment has the option of filing its own timely protective application for formal hearing.

9. Neither the CRB's opinion in this case nor the record of the proceedings before the agency reflect that petitioner asked the CRB to apply the new rule prospectively.

10. The insurer disagrees with the CRB's statement in *Gooden* of the agency's previous interpretation and practice, because in *Sacko* the CRB said it was a case of "first impression." In our view, that characterization supports the CRB's view that it was *Sacko*—not *Gooden*—that "thoroughly upend[ed]" existing case law. *Gooden,* slip op. at 5. In *Gooden,* the CRB essentially returned to the state of affairs before *Sacko.*

plication for a formal hearing and the insurer filed its Motion to Enforce the Informal Conference Decision with the OWC—*Sacko* had not yet been decided,[11] and, therefore, the insurer could not have relied on that ruling in mapping and implementing a strategy. Therefore, because the rule that is now in place yields the *same* result as under the practice in place at the time the insurer filed its Motion to Enforce the Informal Conference Decision (*i.e.,* before *Sacko*), we reject its claim of detrimental reliance. As neither party initiated the agency's changed decision, the third *Reichley* factor finds no application here. With respect to the fourth factor, because the CRB's *en banc Gooden* decision is jurisdictional in nature, once we decide to uphold it, as we do here, there is no principled option to continue both regimes for any period of time.

In conclusion, the CRB reasonably interpreted its regulations as having terminated the informal OWC procedures upon the employer's rejection of the Claims Examiner's Memorandum and filing of an application for a formal hearing, and accordingly properly determined that the employer's appeal was taken from a non-final order. Therefore, the decision of the CRB dismissing the appeal for lack of jurisdiction is

*Affirmed.*[12]

---

11. The CRB's *Sacko* decision was issued on August 25, 2003.

12. On May 12, 2008, the insurer submitted a letter under D.C.App. Rule 28(k) citing authority for the proposition that the Maryland Court of Appeals has determined the underlying insurance coverage dispute at issue in its favor. *See Smigelski v. Potomac Ins. Co. of Ill.,* 403 Md. 55, 939 A.2d 189 (2008). Neither the OHA nor the CRB ruled on the insurance dispute. In light of our disposition affirming the CRB's dismissal of employer's appeal, we do not remand the case to address the merits of the underlying dispute between the parties.