*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-AA-13

DARRYL KELLY, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

POTOMAC ELECTRIC POWER COMPANY, INTERVENOR.

On Petition for Review of an Order of the
Compensation Review Board
(CRB-110-17)

(Argued January 16, 2019          Decided August 29, 2019)

*Benjamin E. Douglas* for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, and *Stacy L. Anderson*, Acting Deputy Solicitor General, filed a statement in lieu of brief in support of respondent.

*William H. Schladt* for intervenor.

Before FISHER and EASTERLY, *Associate Judges*, and WASHINGTON, *Senior Judge*.

Opinion of the court by *Senior Judge* WASHINGTON.

Dissenting opinion by *Associate Judge* EASTERLY at page 36.

WASHINGTON, *Senior Judge*: Workers' compensation claimant Darryl Kelly petitions for review of a decision holding that he cannot recover attorney's fees from his former employer, the Potomac Electric Power Company ("Pepco"), because the conditions precedent to an award of attorney's fees under D.C. Code § 32-1530 were not satisfied. For the reasons discussed below, we affirm.

## I. Factual Background & Procedural Posture

Kelly was employed by Pepco as an underground linesman helper. He was injured on the job on December 14, 2015, and his injury was aggravated on the job on May 20, 2016. Kelly filed a workers' compensation claim, and Pepco accepted the claim and began paying him compensation.

On December 27, 2016, Kelly, represented by counsel, applied for an informal conference with the Officer of Workers' Compensation ("OWC") of the District of Columbia Department of Employment Services ("DOES"), in order to resolve a controversy that had developed over the amount of compensation to which Kelly was entitled. OWC scheduled the informal conference for February 9, 2017. On January 26, Pepco and its insurer, represented by counsel, applied for a formal hearing before the Administrative Hearings Division ("AHD") of DOES.

Following this request, Kelly wrote a letter to the chief administrative law judge ("ALJ") of DOES, dated February 3, in which he asserted that Pepco should not be able to circumvent the informal conference mechanism by applying for a formal hearing after an informal conference had already been scheduled. Pepco responded the same day with its own letter to the chief ALJ, arguing that it was not obligated to participate in the informal conference and was well within its rights to request a formal hearing. On February 16, the chief ALJ issued a letter to Kelly stating that, while he "agree[d]" with Kelly that "the statute favors the informal conference mechanism as a way to avoid litigation costs," under the applicable regulations, "participation in the informal conference 'shall be voluntary'" and "'all informal procedures shall terminate when an application for formal hearing is filed,' which [he] consider[ed] controlling in this situation." He concluded that, because Pepco had applied for a formal hearing, AHD now had jurisdiction over the matter and would schedule a formal hearing. Thus, no informal conference occurred.

The formal hearing was held before an ALJ on May 15, 2017. On July 14, the ALJ issued an order awarding additional compensation to Kelly. Neither party petitioned the Compensation Review Board ("CRB") of DOES for review of the compensation order, and Pepco paid Kelly pursuant to the compensation order.

However, Kelly then applied for attorney's fees from Pepco, pursuant to D.C. Code § 32-1530, and the ALJ issued a summary order denying the application on August 28. On review of the attorney's fees order, the CRB vacated and remanded, stating that, because the order contained no substantive content, it could not determine whether the order was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

On remand, the ALJ issued an October 20, 2017 order concluding that Kelly was not entitled to attorney's fees because: (1) the arguments raised by Kelly in support of his attorney's fees application had been considered and rejected by the chief ALJ, and were thus barred by the doctrine of res judicata; and (2) the conditions precedent to obtaining attorney's fees from the employer under § 32-1530(b) were not met in this case – specifically, the employer did not reject a Memorandum of Informal Conference from OWC, as no informal conference was held.

In a decision and order issued on December 15, 2017, the CRB affirmed the ALJ's order, rejecting the res judicata rationale, but finding that the ALJ's interpretation of D.C. Code § 32-1530 was correct under this court's jurisprudence and the CRB's past holdings. Kelly then petitioned this court for review of the

CRB's decision and order.

## II. Standard of Review

"Our review of administrative agency decisions is limited." *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1111 (D.C. 2004). In general, we "will not disturb an agency ruling as long as the decision flows rationally from the facts, and the facts are supported by substantial evidence in the record," *id.* at 1111, and will "affirm an agency's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Travelers Indem. Co. of Ill. v. District of Columbia Dep't of Emp't Servs.*, 975 A.2d 823, 826 (D.C. 2009). While our review of the CRB's legal rulings is de novo, *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156, 1160 (D.C. 2012); *Providence Hosp.*, 855 A.2d at 1111, we accord deference to its reasonable interpretation of the statute it administers where there is an ambiguity to be resolved. *Pannell-Pringle v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 209, 211 (D.C. 2002); *Johnson v. District of Columbia Dep't of Emp't Servs.*, 111 A.3d 9, 11 (D.C. 2015). Indeed, we will "defer to an agency's interpretation of a statute or regulation it is charged with implementing if it is reasonable in light of the language of the statute (or rule), the legislative history, and judicial

precedent." *Travelers*, 975 A.2d at 826. Thus, "[u]nless the agency's interpretation is plainly wrong or inconsistent with the statute, we will sustain it even if there are other constructions which may be equally reasonable." *National Geographic Soc'y v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 618, 620 (D.C. 1998). "However, the natural corollary of the agency deference proposition is that we are not obliged to stand aside and affirm an administrative determination which reflects a misconception of the relevant law or a faulty application of the law," *id.* (citation, internal quotation marks, and emphasis omitted), as "this court is the final authority on issues of statutory construction." *Fluellyn*, 54 A.3d at 1160 (citation and internal quotation marks omitted).

### III. The Legal Framework

The D.C. Workers' Compensation Act ("the Act"), D.C. Code §§ 32-1501–1545, creates a comprehensive scheme for workers to recover wage loss and medical benefits from their employers for injuries sustained on the job. It is an exclusive and mandatory regime – one that includes a "statutory presumption of compensability" – because "[e]mployees and employers were both thought to gain by a system in which common law tort remedies were discarded for assured compensation regardless of negligence or fault." *Ferreira v. District of Columbia*

*Dep't of Emp't Servs.*, 531 A.2d 651, 654-55 (D.C. 1987); *see also* D.C. Code §§ 32-1503 ("Coverage"), -1504 ("Exclusiveness of liability and remedy"), -1521 ("Presumptions"), -1538 ("Insurance policies"), -1539 ("Failure to secure payment of compensation"), -1542.04 ("Compliance") (2019 Repl.).

## A. Claim Procedures

D.C. Code § 32-1520 outlines the procedures an employee must follow to file a claim of injury, as well as the obligations of the Mayor (through DOES) to provide notice of the claim to the employer, investigate the claim, and provide an opportunity for a hearing on the claim. D.C. Code § 32-1520 (2019 Repl.).[1] The regulations promulgated pursuant to the Act elaborate upon various aspects of the

---

[1] Generally, an employee must provide notice of an injury within thirty days of the injury. D.C. Code § 32-1513(a) (2019 Repl.) ("[n]otice of any injury or death in respect of which compensation is payable under this chapter shall be given within 30 days"); 7 DCMR § 206.1 ("written Notice of Injury shall be given . . . by an employee or beneficiary within thirty (30) days"). Generally, an employee must also file a claim within one year of the injury. D.C. Code § 32-1514(a) (2019 Repl.) ("the right to compensation for disability or death under this chapter shall be barred unless a claim therefor is filed within 1 year"); 7 DCMR § 207.1 ("all claims shall be made *by* injured employees or their beneficiaries in writing within one (1) year"); *see, e.g.*, *KOH Sys. v. District of Columbia Dep't of Emp't Servs.*, 683 A.2d 446, 450 (D.C. 1996) ("D.C. Code [§ 32-1514(a)] requires the employee to file a workers' compensation claim within one year"). There are limited exceptions to these provisions, but the dissent's assertion that, in general, an employee need not file a claim to trigger the employer's obligation to pay, *post* at 41 n.4, cannot be squared with the text of the Act or the regulations.

claims process, 7 DCMR §§ 203-212 (2019), and state that OWC "may utilize . . . non-adjudicative fact finding procedures including informal conferences under § 219 of this chapter to narrow issues, encourage voluntary payment of claims, and encourage agreement between interested parties." 7 DCMR § 211.2.

Regulation 219, entitled "informal procedures," outlines the process by which OWC conducts informal conferences. If an agreement is reached at an informal conference, OWC must prepare a final order embodying the agreement. 7 DCMR § 219.16 (2019). If an agreement is not reached at an informal conference, OWC must prepare a Memorandum of Informal Conference containing recommendations, and the parties have fourteen working days to indicate in writing whether they accept or reject its terms. 7 DCMR § 219.18-.20. Once the Memorandum is issued, if the parties submit a joint statement to OWC within fourteen working days accepting its terms and indicating their intent to be bound by it, and if neither party applies for a formal hearing within thirty-four working days, the Memorandum becomes final and OWC must issue a final order to that effect. 7 DCMR § 219.21-.22; *see Travelers*, 975 A.2d at 829 ("[T]he Memorandum's legal force derives from its acceptance by the parties."). Participation in the conference is voluntary, 7 DCMR § 219.2, and, if either party applies for a formal hearing, informal procedures must terminate. 7 DCMR

§ 219.23; *see National Geographic Soc'y*, 721 A.2d at 622 ("Once an application for a formal hearing is filed . . . all informal procedures must be terminated." (citing 7 DCMR § 219.23)); *Travelers*, 975 A.2d at 829 ("[T]he initial filing of an application for a formal hearing [is] the point when the informal procedures 'terminate.'" (citing 7 DCMR § 219.23)). The regulations also outline the process by which AHD conducts formal hearings, 7 DCMR §§ 220-223 (2019), and state that the Memorandum cannot be admitted as evidence at a hearing. 7 DCMR § 223.3.

## B. Attorney's Fees

Under the Act, a workers' compensation claimant is presumed to be entitled to compensation paid by the employer, but is only allowed to recover attorney's fees from the employer in the two scenarios described in the Act's attorney's fees provision, D.C. Code § 32-1530 (2019 Repl.):

> First, [under subsection (a)], a claimant may recover attorney's fees if the employer disputes liability for the disability and the claimant thereafter uses an attorney's services to successfully obtain compensation.
> . . .
> [Second, under subsection (b)], a claimant may recover attorney's fees if the employer tenders compensation initially without an award, but later refuses to pay additional compensation recommended by the agency

after an informal conference, and the claimant uses an attorney to recover a greater amount via an award of compensation.

*Fluellyn*, 54 A.3d at 1160 (discussing D.C. Code § 32-1530).[2]  Subsection (c)

_____

[2]  These subsections provide, in full:

> (a) If the employer or carrier declines to pay any compensation on or before the 30th day after receiving written notice from the Mayor that a claim for compensation has been filed, on the grounds that there is no liability for compensation within the provisions of this chapter, and the person seeking benefits thereafter utilizes the services of an attorney-at-law in the successful prosecution of his claim, there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier in an amount approved by the Mayor, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

> (b) If the employer or carrier pays or tenders payment of compensation without an award pursuant to this chapter, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, the Mayor shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation, within 14 days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation and thereafter utilizes the

(continued . . .)

further states: "In all cases, fees for attorneys representing the claimant shall be approved in the manner herein provided." D.C. Code § 32-1530(c). The regulations, in turn, set forth the content, contours, and logistical requirements of applications for attorney's fees. 7 DCMR §§ 224, 269 (2019).

This court has interpreted § 32-1530 strictly, and has denied applications for

---

(. . . continued)

> services of an attorney-at-law, and if the compensation thereafter awarded is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation. The foregoing sentence shall not apply if the controversy relates to degree or length of disability, and if the employer or carrier offers to submit the case for evaluation by physicians employed or selected by the Mayor, as authorized in § 32-1507(e), and offers to tender an amount of compensation based upon the degree or length of disability found by the independent medical report at such time as an evaluation of disability can be made. If the claimant is successful in review proceedings before the Mayor or court in any such case, an award may be made in favor of the claimant and against the employer or carrier for a reasonable attorney's fee for claimant's counsel in accordance with the above provisions. In all other cases any claim for legal services shall not be assessed against the employer or carrier.

D.C. Code § 32-1530(a)-(b).

attorney's fees where the criteria set forth in the provision are not satisfied. In *C & P Telephone Co. v. District of Columbia Department of Employment Services*, 638 A.2d 690 (D.C. 1994), we noted that, under the Act, "a person claiming compensation may be entitled to recover attorney's fees in only two situations," *id.* at 693, and held that the claimant could not recover attorney's fees from the employer because neither situation obtained in that case: the employer initially paid medical benefits and thus did not "decline to pay any compensation," making subsection (a) inapplicable, *id.* at 691, 696, and the employer paid the full amount claimed within fourteen days of issuance of the Memorandum of Informal Conference, making subsection (b) inapplicable. *Id.* at 691-92, 697.

Similarly, in *National Geographic*, we stated that "[t]he statute is clear and unambiguous in setting forth the circumstances under which a claimant can be awarded attorney's fees." *National Geographic Soc'y*, 721 A.2d at 621. We found that "[t]he last sentence of [subsection] (b), [which] reads[,] 'In all other cases any claim for legal services shall not be assessed against the employer or carrier,'" provides "the clearest expression of legislative intent to limit the circumstances under which the claimant may recover attorney fees to those outlined explicitly in

the statute." *Id*. (quoting § 32-1530).[3] We concluded that, because the claimant in that case applied for a formal hearing when no informal conference had been held, thereby terminating all informal procedures, the parties never received a "recommendation by the Mayor" following an informal conference – meaning that the employer could not and did not reject such a recommendation. *Id*. at 621-22. We held that, because this criterion of subsection (b) was not met, claimant was not entitled to fees, noting that "the language of the statute [] specifies the circumstances under which an award of attorney's fees is authorized and denies such fees in all other circumstances." *Id*. at 622.

In *Providence Hospital*, we again stated that "a claimant [can] recover attorney's fees in only two situations." *Providence Hosp.*, 855 A.2d at 1111. In that case, an informal conference occurred and a written recommendation was issued, but the claimant rejected the recommendation and sought a formal hearing. *Id.* at 1110, 1112. We held that "[t]he statute clearly did not apply because [the employer] never rejected the Mayor's recommendation" – and thus the claimant could not recover attorney's fees. *Id.* at 1113. We concluded: "The statute is specific in setting forth the requisite conditions for a claimant to recover attorney's

---

[3] When *C & P* and *National Geographic* were decided, this statutory provision appeared at D.C. Code § 36-330; it now appears at D.C. Code § 32-1530, but the text has not changed.

fees, and leaves no discretion to the agency or court to decide cases in which all the conditions are not met." *Id*. at 1114.

Then, in *Fluellyn*, we began by noting the "two distinct scenarios" under which attorney's fees can be assessed against an employer, *Fluellyn*, 54 A.3d at 1160, and found that the case did not meet the criteria of either scenario. The employer initially paid compensation to the claimant, the parties participated in an informal conference, OWC issued a written recommendation, and the employer rejected the recommendation and applied for a formal hearing. *Id*. at 1158. However, the parties reached a settlement before the hearing was held, so the employer withdrew its application for a formal hearing, which was dismissed without prejudice. *Id.* Because there was no formal hearing and thus no ALJ order awarding compensation to the claimant, the final condition was not met and claimant was not eligible for attorney's fees under subsection (b). *Id.* at 1164-65.

Most recently, in *Turner v. District of Columbia Department of Employment Services*, 210 A.3d 156 (D.C. 2019), we noted that "attorney's fees are warranted under § 32-1530 in only two limited situations." *Id.* at 159. In *Turner*, an informal conference was held and a Memorandum of Informal Conference was issued, but the claimant rejected the Memorandum, sought a formal hearing, and received a

compensation award. *Id.* at 158. We concluded that, because the claimant rejected the Memorandum, the claimant "failed to satisfy the 'express condition' of subsection (b) that the employer must 'refuse to accept [the Mayor's] written recommendation." *Id.* at 160 (brackets in original).[4] Thus, the claimant was not entitled to receive attorney's fees from the employer under § 1530(b), as "the plain language of the fee award statute . . . expressly excludes 'all other cases' than those that meet the criteri[a] of either subsection (a) or (b)." *Id.* at 162.[5]

---

[4] On appeal, the claimant argued that that the employer rejected the Memorandum before she did when it noted in an email (to the claimant, not DOES) that it "may" seek a credit for payments already tendered to her. We disagreed, holding that this unofficial, noncommittal communication did not constitute a rejection of the Memorandum. *Turner*, 210 A.3d at 158 n.1, 160-61.

[5] As is clear from our discussion in this section, our prior cases held that a claimant is prohibited from obtaining attorney's fees from the employer unless the specific statutory preconditions of § 1530(b) are satisfied. They did not hold, as the dissent asserts, that § 1530(b) creates an "incentive structure" that prohibits a claimant from obtaining attorney's fees only where s/he is the cause of the statutory preconditions being unsatisfied. *Post* at 37, 51-53, 58. This is because the claimant allowing an informal conference to proceed (i.e., by refraining from seeking a formal hearing that terminates informal procedures) is a necessary but not sufficient condition to ultimately obtaining attorney's fees. Under the plain language of § 32-1530(b), see *supra* note 2, there are several conditions that must be satisfied for a claimant to recover attorney's fees from the employer, and the issuance of a Memorandum of Informal Conference is only one of them.

The dissent also argues that we should reverse or else remand to the CRB because, "[u]ntil now, this court has not confronted [the particular] situation" presented in this case. *Post* at 54-55. Of course, it is the rare case that presents exactly the same facts. However, where the factual distinctions are not material to the legal issue, the authoritative rule must be applied – and, as discussed in detail

(continued . . .)

## IV. Discussion

The parties agree that subsection (a) of § 32-1530 does not apply, as Pepco initially paid on Kelly's claim and did not "decline to pay any compensation." The parties disagree, however, regarding whether subsection (b) applies. This is a question of statutory interpretation, which we review de novo, but we will defer to the CRB's reasonable interpretation of an ambiguous provision of the Act.

Kelly argues that the facts of this case fit under § 32-1530(b), as Pepco initially paid him compensation without an award, Pepco then (effectively) refused to pay additional compensation recommended by DOES, and Kelly then used an attorney to recover a greater amount via an award of compensation from an ALJ. He contends that, while an informal conference did not occur because Pepco

_____

(. . . continued)

below, that is exactly what we do today. Nevertheless, the dissent contends that we should award attorney's fees in this case, even though the preconditions of § 1530(b) were not satisfied, because the employer, rather than the employee, was the cause of these preconditions being unsatisfied. The dissent is, in essence, urging us to articulate a new rule that deviates from our precedent – an invitation we decline, as doing so would run afoul of *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("[N]o division of this court will overrule a prior decision of this court . . . . [S]uch result can only be accomplished by this court en banc.").

applied for a formal hearing before the conference could take place, this action on Pepco's part amounted to a rejection of the informal conference and thus a rejection of any possible written recommendation from the Mayor. He argues that the statutory language encompasses not only a situation in which an employer rejects an actual written recommendation issued by OWC after a conference, but also encompasses Pepco's actions, which were tantamount to "refus[ing] to accept such written recommendation."

Kelly further asserts that our decision in *National Geographic* and the CRB's decision in *Anderson v. Washington Hospital Center*, CRB No. 12-078, 2013 WL 494504 (January 23, 2013), stand for the proposition that a claimant cannot file for a formal hearing before an informal conference is held and then seek to recover attorney's fees – but they do not prevent a claimant from recovering attorney's fees when it is the employer (not the claimant) who has evaded informal procedures. He also claims that the intent of the Act is to promote informal procedures as a means of inexpensive and efficient dispute resolution, and that the denial of attorney's fees to a claimant in his position destroys the parties' incentives to use informal procedures.

"Section 32-1530(b) specifies that a claimant may recover attorney's fees

only where, after making voluntary payments, the employer has rejected the recommendation of the agency . . . after an informal conference, and compensation is thereafter awarded that is greater than the amount of compensation tendered by the employer." *Fluellyn*, 54 A.3d at 1161 (internal quotation marks and brackets omitted). It is undisputed that Pepco made voluntary payments and that Kelly was ultimately awarded compensation that was greater than that tendered by Pepco. The question, then, is whether what occurred here can be construed as Pepco "reject[ing] the recommendation of the agency . . . after an informal conference."

## A. The Plain Language of the Attorney's Fees Provision

Subsection (b) states that "the Mayor shall recommend in writing a disposition of the controversy," and it authorizes attorney's fees "[i]f the employer or carrier refuse[s] to accept such written recommendation, within 14 days after its receipt by them." It appears that, for reasons that are not entirely clear, "written recommendation" is not defined in the Act or the regulations. Nor does the statute itself refer to the informal conference; the informal conference and Memorandum of Informal Conference are discussed in Regulation 219, which outlines informal procedures. 7 DCMR § 219.18-.22. Nevertheless, our case law has read the language in § 32-1530(b) – "the Mayor shall recommend in writing a disposition of

the controversy" – to implicate the informal conference described in Regulation 219, meaning that the Mayor's "written recommendation" referred to in the statute is the Memorandum of Informal Conference described in the regulation. *Turner*, 210 A.3d at 158-59; *Fluellyn*, 54 A.3d at 1158, 1161, 1164; *Providence Hosp.*, 855 A.2d at 1110, 1113-14; *National Geographic Soc'y*, 721 A.2d at 621-22; *see also Travelers*, 975 A.2d at 829; *Anderson*, 2013 WL 494504, at *2-3.[6]

---

[6] In addition to noting this definitional gap, we pause here to observe that the language of the statute, which states that "the Mayor *shall* recommend in writing a disposition of the controversy," § 32-1530(b) (emphasis added), appears to be in tension with the language of the regulation, which states that "participation by interested parties in [informal] conferences shall be voluntary," 7 DCMR § 219.2, and that "[a]ll informal procedures shall terminate when an application for formal hearing is filed." 7 DCMR § 219.23. This issue is not before us because it was neither addressed by the CRB nor – crucially – raised by Kelly in his briefing before this court. Indeed, Kelly's counsel explicitly stated at oral argument that he was not challenging the statute or the regulation. However, we take note of this tension in order to bring it to the attention of the D.C. Council, DOES, and future litigants. *See*, *e.g.*, *District of Columbia v. Brookstowne Cmty. Dev. Co.*, 987 A.2d 442, 449 (D.C. 2010) ("Agencies are creatures of statute and their authority and discretion are limited to that which is granted under their founding statutes. Therefore, regulations they enact pursuant to that statutorily provided authority cannot expand that authority."); *Anderson v. William J. Davis, Inc.*, 553 A.2d 648, 650 n.6 (D.C. 1989) ("To the extent that the regulation may be inconsistent with [a statutory definition], the statute must prevail over the regulation."); *District of Columbia v. Catholic Univ. of Am.*, 397 A.2d 915, 919 (D.C. 1979) ("[I]t is axiomatic that a regulation be consistent with the statute under which it was promulgated."); *Marshall v. District Unemp't Comp. Bd.*, 377 A.2d 429, 434 (D.C. 1977) ("[A]gency regulations or guidelines must not be inconsistent with the basic act.").

We also note that D.C. Code § 32-1530 closely tracks the text of the comparable provision in the federal Longshore and Harbor Workers'

(continued . . .)

As is clear from the discussion of our case law above, we have construed § 32-1530(b) narrowly and have denied applications for attorney's fees when the conditions described in that subsection are not fully satisfied. The language of the statute, read in conjunction with the regulation, dictates that the employer must reject the Mayor's written recommendation – the Memorandum of Informal Conference – in order for the conditions of subsection (b) to be satisfied.[7] This is

_____

(. . . continued)
Compensation Act. However, the federal analogue contains one key difference: a clause mandating an informal conference and defining the written recommendation as the product of an informal conference. 33 U.S.C. § 928(b) (2012) ("[T]he deputy commissioner or Board shall set the matter for an informal conference and following such conference . . . shall recommend in writing a disposition of the controversy."). Additionally, unlike 7 DCMR § 219, the relevant federal regulations do not appear to state that participation in informal conferences is voluntary or that a request for a formal hearing terminates all informal procedures. 20 C.F.R. §§ 702.301, 702.311-317 (2019). To the contrary, 20 C.F.R. § 702.134 (2019) contains language nearly identical to 33 U.S.C. § 928(a) and (b).

[7] The dissent appears to accept that, as discussed in this section, under our case law, the Mayor's written recommendation, referred to in D.C. Code § 1530(b), is the Memorandum of Informal Conference described in 7 DCMR § 219, *post* at 44 n.6, and that, as discussed in section III.A, *supra*, the regulation describes the informal procedures. *Post* at 49 n.11. While the dissent may be correct that the statute intends to promote informal procedures, *id.* at 36, 40, 43-44, its characterization of informal procedures as mandatory, *id.* at 37, 49 n.11, 51, cannot be reconciled with the regulation, which states that "[a]ll informal procedures shall terminate when an application for formal hearing is filed." 7 DCMR § 219.23. This categorical provision of the regulation also means that, the dissent's assertion's notwithstanding, no additional, affirmative "authoriz[ation]" is required for a party to request a formal hearing while informal procedures are underway. *Post* at 49 n.11. On a related note, the dissent contends that "the statute, by its plain language, does not envision a world where the OWC's

(continued . . .)

particularly so in light of the fact that the statute requires that the employer reject

the written recommendation "within 14 days after its receipt," and one can only

receive something that actually exists. Further, the regulation states that this

refusal must be submitted "in writing." 7 DCMR § 219.20. Thus, there can be no

constructive refusal to accept a written recommendation, as Kelly urges. Rather,

Pepco must have actually received a written recommendation from DOES and

refused to accept it – in writing – within fourteen days. That is not what occurred

---

(. . . continued)
recommendation does not exist," *id.* at 49 – but the regulation and our case law clearly do envision such a world. *See, e.g.*, *Providence Hosp.*, 855 A.2d at 1113-14; *National Geographic Soc'y*, 721 A.2d at 621-22.

As we discuss in note 6, *supra*, we do not reach the apparent tension between the statute and the regulation because the issue was not presented to us. The dissent would excuse Kelly's failure to challenge the statute (and, presumably, the regulation) before this court because Kelly argued – and our dissenting colleague agrees – that the plain language of the statute supports his position. *Post* at 49 n.11. But, as explained in this section, logic and our precedents establish that it does not. Moreover, Kelly had, in fact, raised the potential invalidity of the regulation in his brief before the CRB, presumably at least in part because the chief ALJ expressly relied on the regulation in his letter to the parties – but, for whatever reason, Kelly chose to abandon this argument when petitioning for review to this court.

While the dissent asserts that a statute must control over a conflicting a regulation, *post* at 49 n.11, we cannot simply ignore a regulation based on a putative inconsistency that has not been presented to this court. On the contrary, the issue must be raised on appeal in order for the court to address and, if necessary, remedy it. *See, e.g.*, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 865-66 (1984) (discussing the role of a court in considering a "challenge" to an agency action taken pursuant to a statute).

here, and this case therefore falls into the category of "all other cases [in which] any claim for legal services shall not be assessed against the employer or carrier." § 32-1530(b); *see also* § 32-1530(c) ("In all cases, fees for attorneys representing the claimant shall be approved in the manner herein provided."). Hence, the CRB's holding that attorney's fees are not authorized in this case was reasonable in light of the language of the statute and judicial precedent.[8]

---

[8] The Fourth, Fifth, and Sixth Circuits, interpreting the analogous federal provision, see *supra* note 6, have reached the same result. *See*, *e.g.*, *Lincoln v. Director, Office of Workers' Comp. Programs*, 744 F.3d 911, 915 (4th Cir. 2014) ("[T]aken together, § 928(a) and (b) mandate fee-shifting in certain defined circumstances, but plainly do not provide for attorneys' fee awards in every case in which the claimant is successful." (citation and internal quotation marks omitted)); *Virginia Int'l Terminals, Inc. v. Edwards*, 398 F.3d 313, 318 (4th Cir. 2005) ("The failure to hold an informal conference or issue a written recommendation is fatal to a claim for attorney's fees under the plain terms of section 928(b)."); *Carey v. Ormet Primary Aluminum Corp.*, 627 F.3d 979, 982 (5th Cir. 2010) ("[S]ection 928(b) requires all of the following: (1) an informal conference, (2) a written recommendation . . . , (3) the employer's refusal to adopt the written recommendation, and (4) the employee[ hiring] a lawyer to achieve a greater award than what the employer was willing to pay after the written recommendation." (citation omitted)); *Andrepont v. Murphy Expl. & Prod. Co.*, 566 F.3d 415, 421 (5th Cir. 2009) ("[T]he plain language . . . requires that an employer must refuse to accept the informal recommendation before attorneys' fees are shifted"; "[W]e [cannot] elevate the purposes of the statute above the plain text reading."); *Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Comp. Programs*, 473 F.3d 253, 266 (6th Cir. 2007) ("We adopt the approach taken by the Fourth and Fifth Circuits" because "[t]he language of subsection (b) plainly states that in order for fees to be assessed under its terms there must be a written recommendation.").

The Ninth Circuit has allowed a claimant to recover attorney's fees in the absence of a written recommendation. *National Steel & Shipbuilding Co. v. U.S.*

(continued . . .)

While Kelly may argue that this outcome is formalistic or even harsh, we are bound by the plain language of the statute, and we have held that "the plain language of § 32-1530(b) authorizes an award of attorney's fees only when the express conditions of the statute are met, including the employer's rejection of the Mayor's written recommendation in the case." *Providence Hosp.*, 855 A.2d at 1114. As we stated in response to a similar argument regarding the "humanitarian purpose" of the Act:

> In applying the Act, we are aware of the principle that workers' compensation laws are to be liberally construed for the benefit of the employee. While that principle allows doubts to be resolved favorably to the employee, it does not relieve the courts of the obligation to apply the law as it is written and in accordance with its plain meaning. The plain language of [subsection] (b) makes

---

(. . . continued)

*Dep't of Labor, Office of Workers' Comp. Programs*, 606 F.2d 875, 882 (9th Cir. 1979); *see also Matulic v. Director, Office of Workers' Comp. Programs*, 154 F.3d 1052, 1060-61 (9th Cir. 1998); *Todd Shipyards Corp. v. Director, Office of Workers' Comp. Programs*, 950 F.2d 607, 610-11 (9th Cir. 1991). However, the other circuits have rejected this approach. *Andrepont*, 566 F.3d at 420 (noting that the Fourth, Fifth, and Sixth Circuits have "rejected the Ninth Circuit's 'legislative intent' approach, . . . [and] conclud[ed] that one of section 928(b)'s explicit prerequisites for an attorneys' fees award is that the employer must reject the recommendations that emerge from the informal conference"); *Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 267 (noting that "there is little, if any, support for the Ninth Circuit's position, even in the legislative history"). Moreover, in examining the Ninth Circuit's position, this court has noted that "[t]he difficulty with the analysis in *National Steel* is that the court resorted to legislative intent without addressing the statutory language or determining whether the statute was clear and unambiguous." *National Geographic Soc'y*, 721 A.2d at 622 n.3.

> an award of attorney's fees appropriate, insofar as it is relevant here, only where a controversy develops over additional compensation and the employer declines to accept the Mayor's recommendation for resolution within fourteen days of its receipt. That did not occur here.

*National Geographic Soc'y*, 721 A.2d at 622 (citation, internal quotation marks, and footnote omitted).

On a related note, Kelly's contention that the workers' compensation regime favors informal resolution of disputes may well be true, as the chief ALJ acknowledged in his February 2017 letter to the parties. But we look to statutory intent only when the statutory language is ambiguous.

> In interpreting a statute, we first look to its language; if the words are clear and unambiguous, we must give effect to its plain meaning. The intent of the legislature is to be found in the language used. The burden on a litigant who seeks to disregard the plain meaning of the statute is a heavy one, and this court will look beyond the ordinary meaning of the words of a statute only where there are persuasive reasons for doing so.

*National Geographic Soc'y*, 721 A.2d at 620 (citations, internal quotation marks,

and brackets omitted).[9]  We have repeatedly held that the text of § 32-1530(b) is clear and unambiguous.  See *supra* section III.B; *see also Turner*, 210 A.3d at 162 (discussing "the plain language of the fee award statute"); *Fluellyn*, 54 A.3d at 1161, 1164 (noting this court's holdings that the language of § 32-1530(b) is "clear," "unambiguous," and "plain"); *Providence Hosp.*, 855 A.2d at 1113 (discussing the court's "rel[iance] on the plain language"); *National Geographic Soc'y*, 721 A.2d at 621-22 (discussing "the clear[,] unambiguous," and "plain language"); *C & P Tel. Co.*, 638 A.2d at 696-97 (applying "the plain language of the provision").[10]  And we have rejected a similar argument in a related context:

> [T]he insurer argues that unless the OWC's jurisdiction is continued after a formal hearing application is withdrawn, there will be little incentive to use the OWC's informal proceedings, which are more cost-effective and accessible to claimants, and a necessary prerequisite for a claimant's entitlement to receive attorney's fees.  *See* D.C. Code § 32-1530(b) (2001);

[9]  *Cf. Andrepont*, 566 F.3d at 421 ("[W]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." (citation omitted)).

[10]  We therefore cannot discern what a remand to the CRB, as suggested by the dissent, *post* at 54-55, would accomplish.  We defer to the CRB's reasonable interpretation of ambiguous statutory provisions, see *supra* section II, but, given our repeated holdings that the plain language of § 1530 is clear and unambiguous, there is no ambiguity for the CRB to interpret.  This is presumably why the CRB relied on this court's precedents applying § 1530's plain language to resolve Kelly's claim.  See *supra* section I.

> *Nat'l Geographic Soc'y*, 721 A.2d at 622. These policy-based concerns cannot, however, trump the clear language of the regulations.

*Travelers*, 975 A.2d at 829. Kelly has simply not met his heavy burden to persuade us to disregard the language of the statute and look beyond the ordinary meaning of its words in order to reach the interpretation he is urging.[11]

---

[11] We are similarly unpersuaded by our dissenting colleague's invocation of the legislative history of § 1530. *Post* at 46 n.8. As we observed above with respect to a federal circuit decision that contravened the plain language of the comparable federal provision, *supra* note 8, courts ordinarily do not probe legislative intent when the statutory language is plain. *See Johnson*, 111 A.3d at 10 ("If the meaning of the statute is plain on its face, resort to legislative history or other extrinsic aids to assist in its interpretation is not necessary." (citation omitted)).

In any event, the legislative history that the dissent cites does not speak with any clarity to this issue, discussing in only the briefest, most general terms the role of attorney's fees awards in "penalizing insurance companies for not paying valid claims" and "discouraging dilatory action by companies." D.C. Council, Comm. on Public Servs. and Consumer Affairs, Report on Bill 3-106, "D.C. Workers' Comp. Act of 1979," at 17 (Jan. 16, 1980). *See also National Geographic Soc'y*, 721 A.2d at 622 (rejecting claimant's reliance on the same report because the report "simply urges the retention of a provision of the law which authorized attorney's fees 'where a claim is contested and not voluntarily paid by the employer and insurance carrier . . . .' Nothing in the cited provision provides a persuasive reason for ignoring the plain language of [subsection] (b).").

Moreover, this court has noted that legislative history contemporaneous and complementary to that cited by the dissent confirms that the "overall objective [of the Act] was to reduce employer and carrier expenses resulting from workers' compensation claims." *Baghini v. District of Columbia Dep't of Emp't Servs.*, 525 A.2d 1027, 1030 (D.C. 1987) (discussing D.C. Council, Comm. on Hous. and Econ. Dev., Report on Bill 3-106, "D.C. Workers' Comp. Act of 1979" (Jan. 29,

(continued . . .)

B. <u>The Purpose and Effect of the Attorney's Fees Provision</u>

Kelly's argument regarding unfairness to claimants is likewise unavailing. Kelly is correct that it was the claimants in *National Geographic* and *Anderson* who bypassed the informal conference and proceeded directly to a formal hearing. *National Geographic Soc'y*, 721 A.2d at 622; *Anderson*, 2013 WL 494504, at *3. Similarly, in *Providence Hospital*, it was the claimant who received and rejected the Memorandum of Informal Conference and sought a formal hearing. *Providence Hosp.*, 855 A.2d at 1110. And we did indeed state in *National Geographic* that "[w]hen claimants decline to use that informal procedure in favor of the formal claims procedure, they do so at the risk of increased expense to themselves and to the system." *National Geographic Soc'y*, 721 A.2d at 622.

---

(. . . continued)
1980)). After years of operating under the federal statute, see *supra* note 6, the D.C. Council passed the Act in 1980 to create its own workers' compensation regime because "coverage and compensation under the prior law was unduly broad and generous." *Id.* (citation omitted); *see also* Comm. on Hous. and Econ. Dev., Report on Bill 3-106, at 2-5. Thus, while § 1530 does provide for attorney's fees, subsection (f) "put[s] a ceiling on what may be regarded as 'reasonable'" attorney's fees because doing so "ensures that the Act's main purpose of reducing employer and carrier expenses is fulfilled." *Baghini*, 525 A.2d at 1030. Accordingly, even if we were to bypass the plain language of the statute and examine the legislative history, that history casts significant doubt on the dissent's attempts to relax the preconditions to obtaining employer-paid attorney's fees under § 1530(b).

But the claimants in those cases were not denied attorney's fees as punishment for refusing to participate in an informal conference; they were denied attorney's fees because the statutory preconditions were not met. This case is not meaningfully distinguishable from those cases, as it is immaterial whether it is the claimant or the employer who chooses to forgo the informal conference. There is simply no basis in the statute for distinguishing between cases in which the claimant forgoes an informal conference and cases in which an employer forgoes an informal conference. The statute, read in conjunction with the regulation, dictates that the employer must reject the Mayor's written recommendation – the Memorandum of Informal Conference – in order for the claimant to recover attorney's fees. No exceptions or variations are permitted.

Moreover, to the extent that there is a strategic disparity between claimants and employers vis-à-vis the use of informal procedures, it is created by the statute itself, read in conjunction with the regulation. It may (or may not) be that, given the strictures of § 32-1530(b), it would be strategically ill-advised for a claimant to bypass informal procedures if s/he is ultimately seeking to recover attorney's fees, while it would be strategically sound for an employer to proceed directly to a formal hearing, as this will remove the employer from the ambit of § 32-1530(b)

and thus reduce its exposure to liability for attorney's fees.[12]  Yet we must give

---

[12] Pepco contended in its brief and at oral argument that it is also prudent for employers to forgo informal procedures and proceed to formal hearings because, pursuant to the CRB's holding in *Levy v. Washington Metropolitan Area Transit Authority*, CRB No. 11-151, 2014 WL 5847461 (Oct. 8, 2014), the statute of limitations on modification of awards under D.C. Code § 32-1524 (2019 Repl.) only begins to run upon the issuance of a compensation award after a formal adjudication – meaning that, in order to avoid the possibility of serial modifications of compensation by claimants in certain types of cases, employers must seek formal hearings to ensure the finality of awards.

In *Levy*, on instructions from this court on remand, the CRB interpreted § 32-1524 in light of *Fluellyn*, 54 A.3d at 1163 (interpreting "award" in § 32-1530(b) to mean compensation payable pursuant to an official adjudication), and *Sodexho Marriott Corp. v. District of Columbia Dep't of Emp't Servs.*, 858 A.2d 452, 456 (D.C. 2004) (holding that an agreement between employer and claimant that leaves open the possibility of additional benefits is not a "complete and final settlement" under § 32-1508(8) (2019 Repl.), and therefore not a compensation order under § 32-1524). *Levy*, 2014 WL 5847461, at *3, 6. Yet the CRB's holding in *Levy* was a limited one, as it found only that the settlement agreement in that case was open-ended and therefore not a compensation order or an award within the meaning of the Act. *Id.* at *6. As a result, the agreement did not start the clock running on the one-year statute of limitations for modification of awards under § 32-1524, meaning the claimant's later claim for additional benefits was not time-barred. *Id.* *Levy* did not hold that employers seeking to ensure that the statute of limitations on modification of awards will begin to run must always proceed to formal hearings; it only suggested that they must take care to ensure that the settlement agreements they enter into with claimants are complete and final dispositions of the matters.

There is nothing in our case law to suggest that employers must proceed to formal adjudication to protect their interests with respect to modification of awards. To the contrary, relevant authority indicates that settlement agreements, informal conference agreements, and Memoranda of Informal Conference will serve as the equivalent of compensation orders for the purposes of the statute of limitations under § 32-1524 – so long as they are, by their terms, full and final dispositions. *See* D.C. Code § 32-1508(8) ("These settlements [approved by the

(continued . . .)

meaning and effect to statutory language unless doing so would lead to an absurd or unreasonable result. *See*, *e.g.*, *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (en banc). No such result obtains here.

A strategic disparity between the parties would not be absurd because parties to litigation have no inherent right to recover attorney's fees, and are permitted to do so only in particular situations in which the recovery of such fees is specifically authorized for policy reasons. *See, e.g.*, 20 Am. Jur. 2d *Costs* § 48 (2019) (explaining the "American Rule" that, "absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney's fees and may not recover those fees from an adversary"); 22 Am. Jur. 2d *Damages* § 444 cmt. (2019) ("The 'American rule' as to litigants being responsible for their own attorney's fees has been observed from the earliest days of the Republic.");

_____

(. . . continued)

Mayor] . . . shall be a final binding compensation order."); 7 DCMR § 219.16 ("Following an informal conference at which an agreement is reached, [OWC] shall . . . prepare a Final Order which embodies the agreement"); 7 DCMR §§ 219.18, .21 ("If at the close of an informal conference, the parties have not reached an agreement on all of the disputed issues, [OWC] shall . . . prepare a Memorandum of Informal Conference containing recommendations." "If the parties agree with the Memorandum of Informal Conference . . . and submit . . . a joint statement . . . indicating their acceptance of the terms . . . and their intent to be bound . . . [OWC] shall issue a Final Order."). Thus, to the extent employers are concerned about the finality of awards, there is nothing to discourage them from engaging in informal, non-adjudicatory processes to dispose of claims efficiently and cost-effectively.

*6921 Georgia Ave., N.W., Ltd. P'ship v. Universal Cmty. Dev., LLC*, 954 A.2d 967, 971 (D.C. 2008) ("The responsibility for paying attorneys' fees stemming from litigation, in virtually every jurisdiction, is guided by the settled general principle that each party will pay its respective fees for legal services. However, this *American Rule* is subject to exception premised upon statutory authority, contractual agreement, or certain narrowly defined common law exceptions.").[13]

Here, the D.C. Council created a regime in which workers' compensation claimants can only recover attorney's fees from their employers in the scenarios described in subsections (a) and (b) of § 32-1530. These scenarios are admittedly narrow and specific,[14] and the result may (or may not) be that, in practice, employers often forgo the informal process and claimants rarely recover attorney's fees. We do not pass upon the advisability of the scheme created by the statute, substitute our opinion for that of the Council, or seek to legislate in its place; rather, we take the D.C. Code as we find it. *See*, *e.g., Ferguson v. Skrupa*, 372

---

[13]    *Cf. Andrepont*, 566 F.3d at 420 ("[A] literal reading of [33 U.S.C. § 928(b), see *supra* note 6] subjects claimants . . . to the presumptive and generally applicable American Rule . . . [u]nder [which] a fee-shift is allowed *only if* there is some 'specific and explicit' statutory exception." (citation omitted)).

[14]    Given that the main purpose of the Act was to reduce employers' expenses, see *supra* note 11, it is perhaps unsurprising that the D.C. Council limited employers' liability for claimants' attorney's fees.

U.S. 726, 729 (1963) ("[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation."); *Vanderhoof v. District of Columbia*, 269 A.2d 112, 115 (D.C. 1970) ("Courts will not inquire into the wisdom of such enactments when the measures used are not arbitrary or discriminatory."); *Bogen v. Green*, 239 A.2d 154, 155 (D.C. 1968) ("[I]t is our function to say what the law is, rather than what it should be."); *Hurley v. Reed*, 288 F.2d 844, 847 (D.C. Cir. 1961) ("Courts do not sit to determine the expediency and wisdom of statutes, but to see that the directions and authorizations of the legislative body within its constitutional powers are adhered to.").[15] Thus, to the extent that claimants, attorneys, or others (including our dissenting colleague, *post* at 37-38, 53-54, 56-58) are concerned that employers may use the language of subsection (b) to engage in gamesmanship, these concerns must be addressed to the D.C. Council.

In addition, we note that the Act already contains a provision designed to penalize employers for bad faith delays in the payment of compensation. D.C. Code § 32-1528(b) (2019 Repl.). And, as to informal procedures in particular, employers may still be inclined to utilize them because "the cost and time advantages of the informal OWC route remain as incentives for most parties."

---

[15] *Cf. Andrepont*, 566 F.3d at 421 ("[B]ased on the plain text of Section 928(b) . . . fee-shifting is unavailable here . . . . [Claimant's] policy arguments are therefore best addressed to Congress, not the courts.").

*Travelers*, 975 A.2d at 829.

Finally, and perhaps most fundamentally, our holding today amounts to a logical application of the plain language of § 32-1530(b) that is entirely consistent with our prior decisions – and in no way affects the entitlement of a workers' compensation claimant to obtain wage-loss and medical benefits, which is the purpose of the workers' compensation regime.[16] As noted above, employers pay these benefits because they are required to do so by the Act – not because they are deterred by the prospect that they may have to pay attorney's fees in certain limited circumstances.[17] The regime requires employers to pay compensation for

---

[16] We are, therefore, perplexed by the dissent's accusation that our decision is a "third path" that "depart[s] from the plain language of § 32-1530." *Post* at 56. We are similarly puzzled by the dissent's speculative pronouncements regarding the impact of today's decision on the workers' compensation scheme and on the plight of claimants. *Id.* at 37-38, 57-58 & n.16. Claimants' attorneys have never been guaranteed attorney's fees paid by the employer. Indeed, the dissent itself notes that Kelly's attorney was apparently concerned from the outset about receiving fees, *id.* at 57 n.16 – and yet he proceeded to represent Kelly throughout the entirety of the proceedings, despite receiving no upfront guarantee that he would ultimately be entitled to fees paid by the employer under § 1530. In fact, Kelly has been represented by counsel since his initial request for an informal conference; had the parties successfully reached agreement through informal procedures, as he argues the statute intends, he certainly would not have been entitled to recover attorney's fees from Pepco under the statute. Still, counsel was undeterred.

[17] Our dissenting colleague's assertions notwithstanding, *post* at 36, 42-46, 58, the existence and functioning of the workers' compensation regime simply

(continued . . .)

workplace injuries in all cases, but it only requires them to pay attorney's fees in particular cases where particular conditions are satisfied:  under subsection (a), the employer must decline to pay any compensation, and, under subsection (b), a specific sequence of events involving an informal conference must occur, as described above.  These conditions were simply not satisfied in this case.[18]

---

(. . . continued)

does not depend on the attorney's fees authorization found in § 1530, which, by its own terms, is limited.  See *supra* section III.B.  Still, the dissent contends that, because § 1530(a) and (b) "describe the universe where the employer forces an employee to litigate and then loses," the provision "is a critical lever to promote the core objectives of the workers' compensation scheme: voluntary, prompt compensation."  *Post* at 45.  Even assuming this were true, it is for the D.C. Council to determine the size and scope of that universe.  It has already done so through "the plain language of the statute," which – as our dissenting colleague has elsewhere recognized – "we assume best reflects the intent of the legislature." *Johnson*, 111 A.3d at 10.

[18]  Significantly, the nonpayment of attorney's fees does not appear to have compromised Kelly's ability to receive wage-loss and disability benefits.  Indeed, as noted, Pepco accepted Kelly's claim and began paying him compensation for temporary total disability at the outset.  (On a related note, we do not, as the dissent asserts, fail to "acknowledge the central import of voluntary, prompt payment," *post* at 40; rather, because voluntary, prompt payment occurred in this case, there was no need to examine it here.)  Kelly then requested an informal conference to seek permanent partial disability (PPD) benefits, but Pepco applied for a formal hearing before the informal conference was held.  The evidence presented at the hearing showed that one of the physicians who had examined Kelly opined that he had a 21% impairment rating, while Pepco's independent medical examiner opined that he had 0% impairment.  After the hearing, the ALJ issued a compensation order awarding Kelly 7% PPD.  (This amount was apparently greater than what Pepco initially paid to Kelly voluntarily, though how much greater is unclear from the record.)  Neither party petitioned for review of the compensation order and

(continued . . .)

## C. Costs

Because Kelly is not entitled to recover attorney's fees under subsections (a) or (b) of § 32-1530, he is not permitted to recover costs under subsection (d). D.C. Code § 32-1530(d) ("In cases where an attorney's fee is awarded against an employer . . . there may be further assessed against such employer . . . costs.").

## V. Conclusion

The plain language of D.C. Code § 32-1530 authorizes a workers' compensation claimant to recover attorney's fees from the employer in two specific situations, neither of which occurred in this case. Therefore, Kelly is not entitled to recover attorney's fees from Pepco and the CRB's decision and order is affirmed.

*So ordered.*

---

(. . . continued)
Pepco paid Kelly pursuant to that order. On the whole, then, the statutory scheme appears to have operated as it was intended to in this case.

EASTERLY, *Associate Judge*, dissenting:    The District's workers' compensation scheme is based on the premise that employee injuries are a cost of doing business and should be absorbed by the employer, not the employee.  The employer benefits from this scheme by gaining protection from tort liability.  It is critical to the functioning of this safety net for workers injured on the job that employers voluntarily and promptly pay the benefits due.  The statute thus provides multiple inducements for voluntary, prompt payment.  Key among these is the one-sided, employee-only attorney's fee statute, D.C. Code § 32-1530, which covers the cost of legal assistance whenever an employer opts to formally litigate an employee's entitlement to benefits and loses.

In particular, the subsection at issue in this case, § 32-1530(b), promotes swift, informal resolution of any controversy that arises after voluntary payment is made.  The controversy must first be submitted to the Mayor, in this context represented by the Department of Employment Services' (DOES) Office of Workers' Compensation (OWC), which "*shall* recommend in writing a disposition of the controversy."  D.C. Code § 32-1530(b) (2019 Repl.) (emphasis added).  The statute then permits the employer either to accept that recommendation and avoid an award of attorney's fees, or to challenge the recommendation and expose itself to an attorney's fee award if it loses in ensuing formal litigation.

Under the plain language of the statute, informal procedures before the OWC are mandatory; the employer cannot bypass the OWC to avoid accepting or rejecting its recommendation and thereby insulate itself from an attorney's fee award. Accordingly, I cannot agree with my colleagues in the Majority that the employer in this case defeated Mr. Kelly's right to attorney's fees by taking such evasive action.

To reach their conclusion, my colleagues purport to rely on the plain language of D.C. Code § 32-1530(b). But in fact the foundation of their analysis rests on prior decisions of this court that do not address, much less resolve, the issue before us. The Majority Opinion breaks new ground, and in so doing actually inverts the worker's compensation statute's incentive structure. By holding that an employer can take steps to insulate itself from an attorney's fee award – namely, by controverting benefits that are legitimately due, refusing to participate in informal proceedings before the OWC, and instead forcing an employee to litigate his right to compensation at a formal hearing before an ALJ – the Majority Opinion motivates employers to do just that. Going forward, we can expect more cases to go to formal hearings where fewer employees will have counsel to advocate on their behalf for benefits legitimately due; we can also expect more employers to minimize, if not disregard, their obligations to their

injured employees.  In short, the Majority Opinion not only is incorrect as a matter of law, but also deals a serious blow to the District's safety net for injured workers.

**I.  The District's Workers' Compensation Act Favors Voluntary, Prompt Payments, and the Attorney's Fee Provision Furthers that Goal.**

The District's Workers' Compensation Act recognizes that employers are generally liable for the injuries their employees receive while at work, and it is meant to provide an "inexpensive mechanism to pursue claims against employers." *Nat'l Geographic Soc'y v. District of Columbia Dep't of Emp't Servs.*, 721 A.2d 618, 622 (D.C. 1998).  "The justification for workmen's compensation is best expressed in terms of law and economics."  District of Columbia Workers' Compensation Act of 1979, D.C. Council, Committee on Public Services and Consumer Affairs, Report on Bill 3-106 at 5 (Jan. 16, 1980) ("Committee Report").  The premise is that

> [d]isabling injuries by accident and disease are inevitable results of the economic activities which make modern civilization possible. . . . People who are crippled in the production of the community's wealth, and the dependents of those who are killed, have a right to indemnification from the public who consume the fruits of their labor.  The economic cost of work injuries are treated as a direct expense of doing business, similar to wages, machinery[,] and materials.  If the employer is held responsible for death or disability in the course of

> employment he will insure against the loss and price his goods and services accordingly. This method ensures the widest, and least burdensome[,] distribution of the cost of work-related accidents and diseases.

*Id*. at 6. As the Majority Opinion acknowledges, both employees and employers stand to gain from a workers' compensation scheme. Employees gain "assured compensation regardless of negligence or fault"; employers avoid costly civil litigation and potentially large damages awards. *Ante* at 6-7 (quoting *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 531 A.2 651, 654-55 (D.C. 1987)); *see also* D.C. Code § 32-1504 (2019 Repl.) (making workers' compensation the "exclusive" remedy for employees "otherwise entitled to recover damages from such employer at law on account of . . . injury or death").[1]

---

[1] As the Majority Opinion acknowledges, *ante* at 19 n.6, the District's Workers' Compensation Act is patterned on the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950 (2017), which protected the District's workers before the District enacted its own worker's compensation scheme. The primary aim of the District's Workers' Compensation Act was not to reduce costs for employers. *But see ante* at 26 n.11. Instead, it was to shift from a costly and ill-fitting federal program to a locally-operated one that continued to protect the District's workers. As the Committee on Public Services and Consumer Affairs noted of its (eventually adopted in relevant part) recommendations to the Council: "[Our] amendment [to draft legislation replacing the federal law]. . . incorporates changes that demonstrably will result in cost savings; however, [it] does not include changes in the law which will result in a loss of benefits or inequities to workers." Committee Report at 5.

As injured employees have no choice but to rely on workers' compensation, the success of the District's workers' compensation scheme turns on voluntary, prompt payment by employers.[2] The Majority Opinion does not acknowledge the central import of voluntary, prompt payment, and allows only that it "may well be true" "that the workers' compensation regime favors informal resolution of disputes." *Ante* at 24. But it is plain from the text of the statute that voluntary, prompt payment is employers' default obligation and swift, informal resolution of any compensation disputes is highly favored. Attorney's fee awards made statutorily available only to employees, and only when employers opt to formally litigate and lose, promotes this goal.

Under the statute, both injured employees and their employers have initial reporting obligations to the OWC, thereby ensuring everyone is on notice that a compensable injury may have occurred. D.C. Code §§ 32-1513, -1532(a) (2019 Repl.); *see* DOES OWC Forms 7, 8.[3] Thereafter, the statute provides that

---

[2] I use "employer" to refer to both the actual employer and its insurance carrier, which is often the real party in interest.

[3] The statute refers to the Mayor. Pursuant to Mayor's Order 82-126, the Mayor has delegated her authority and obligations under the statute to DOES. Within DOES, workers' compensation matters are handled by the OWC and, when a formal hearing is required, the DOES ALJs. *See, e.g.*, 7 DCMR §§ 220.1, 221.1.

"[c]ompensation under this chapter *shall be paid periodically, promptly, and directly to the person entitled thereto, without an award*, except where liability to pay compensation is controverted by the employer." D.C. Code § 32-1515(a) (emphasis added). The statute imposes deadlines for initial voluntary payments without an award – which are tied not to the filing of the claim but rather to the employer's "knowledge of the job-related injury or death," § 32-1515(b)-(e); *accord* 7 DCMR § 209 – so the employer cannot string along employees with empty promises of payment. The statute also requires the employer to document with the OWC that voluntary payment has been made. D.C. Code § 32-1515(b), (c), (g); *see also* DOES OWC "Memo of Payment of Workers' Compensation" Form. Lastly, the statute sets a schedule for continued voluntary payment of fees and imposes a penalty when such payments are late. D.C. Code § 32-1515(e).[4]

---

[4] Thus, the Majority Opinion's assertion that an employee must generally file a claim for benefits to trigger the employer's payment obligation, *ante* at 7 n.1, is unsupported by the statute and incorrect.

The Majority Opinion mistakenly relies on D.C. Code § 32-1514 (2019 Repl.), a statute of limitations provision. But § 32-1514 makes clear that an employee need only file a claim if the employer fails to voluntarily pay the benefits due. It clearly conceives that employers will voluntarily pay benefits upon notice of the injury, but without the filing of a claim, by providing that employees must either file a claim "within 1 year after the injury or death" or "[i]f payment of compensation has been made without an award on account of such injury or death, . . . within 1 year after the date of the last payment." D.C. Code § 32-1514(a); *see also* 7 DCMR §§ 207.1, 207.2.

The only way an employer may legitimately decline to pay compensation is by filing a "Notice of Controversion" form with the OWC within a certain time period. *See* D.C Code § 32-1515(a), (d); DOES OWC Form 11. Whenever payment is controverted – whether or not benefits have been previously awarded – the statute broadly requires DOES, through its OWC and its ALJs in its Administrative Hearings Division, to "make such investigations, cause such medical examinations to be made, or hold such hearings, and take further action as [DOES] considers will properly protect the rights of all parties." D.C. Code § 32-1515(h).

An employer who controverts an employee's right to compensation, however, exposes itself to financial risk. This risk comes in the form of a one-sided, employee-only attorney's fee provision.[5] If an employer rejects at the outset

---

[5] The default "American rule" in civil litigation is that each party assumes responsibility for the fees and costs it incurs in prosecuting or defending an action. *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 35 (D.C. 1986). The attorney's fee statute in the District of Columbia's workers' compensation regime is a statutory departure from this common-law rule, as the Majority Opinion acknowledges. *See ante* at 30-31 (noting statutory exceptions to the American rule where "the recovery of [attorney's] fees is specifically authorized for policy reasons"). It is a departure not only because of its fee-shifting provisions, but also because absent a settlement agreement, *see* 7 DCMR § 269.5, fee awards are the mechanism by which employees' attorneys get paid for their services; they must seek and receive DOES approval for payment of services rendered under the act.

(continued . . .)

a legitimate request to pay benefits, subsection (a) makes an award of attorney's fees mandatory:

> *If the employer or carrier declines to pay any compensation* on or before the 30th day after receiving written notice from the Mayor that a claim for compensation has been filed, *on the grounds that there is no liability for compensation* within the provisions of this chapter, and the person seeking benefits thereafter utilizes the services of an attorney-at-law in the successful prosecution of his claim, *there shall be awarded, in addition to the award of compensation, in a compensation order, a reasonable attorney's fee against the employer or carrier* in an amount approved by the Mayor, or court, as the case may be, which shall be paid directly by the employer or carrier to the attorney for the claimant in a lump sum after the compensation order becomes final.

D.C. Code § 32-1530(a) (emphasis added).

Even when an employer voluntarily pays benefits to an employee, subsection (b) mandates an award of attorney's fees if a controversy subsequently arises about the amount of payment due and the employer litigates and loses. § 32-1530(b). There is, however, a predicate step that gives the employer a safe harbor from fees and again promotes swift, informal resolution of disputes: Before any

---

(. . . continued)
D.C. Code § 32-1530(c), (e), (f); 7 DCMR §§ 224.1 *et seq.*, 269.1 *et seq.* The only question is who DOES orders to pay such fees: the employer or the employee.

formal litigation that leads to an award in favor of the employee that serves as the basis for an application for attorney's fees, the OWC must weigh in on the controversy. If the employer accepts the OWC's recommended informal disposition, the employer avoids liability for attorney's fees. In relevant part, D.C. Code § 32-1530(b) states:

> If the employer or carrier pays or tenders payment of compensation without an award pursuant to this chapter, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, *the [OWC] shall recommend in writing a disposition of the controversy. If the employer or carrier refuse to accept such written recommendation*, within 14 days after its receipt by them, they shall pay or tender to the employee in writing the additional compensation, if any, to which they believe the employee is entitled. If the employee refuses to accept such payment or tender of compensation and thereafter utilizes the services of an attorney-at-law, and if the compensation thereafter awarded [by an ALJ] is greater than the amount paid or tendered by the employer or carrier, a reasonable attorney's fee based solely upon the difference between the amount awarded and the amount tendered or paid shall be awarded in addition to the amount of compensation.

(emphasis added).[6]

---

[6] As the Majority Opinion acknowledges, *ante* at 18, the statute is silent about the process for the issuance of a recommendation from the Mayor, but our court appears to have assumed that this recommendation must be the product of the OWC's informal procedures described in 7 DCMR § 219.1 *et seq*. The federal

(continued . . .)

The Majority Opinion repeatedly emphasizes that an employee is "only allowed to recover attorney's fees . . . in the two scenarios described in [§ 32-1530]," *ante* at 9; *see also id.* at 12, 13, 14, 15, 31, 33-34, suggesting the attorney's fee provision does not do much work in the workers' compensation regime. But the Majority Opinion fails to appreciate that these two provisions describe the universe where the employer forces an employee to litigate and then loses. Thus the attorney's fee provision is a critical lever to promote the core objective of the workers' compensation scheme: voluntary, prompt payment of compensation.[7] It does this not only by creating a financial inducement for employers to voluntarily

---

(. . . continued)
statute makes this process explicit in its analogue to D.C. Code § 32-1530(b). It provides that, if a controversy develops after an initial voluntary payment, the OWC analogue "shall set the matter for an informal conference and following such conference . . . shall recommend in writing a disposition of the controversy." 33 U.S.C. § 928(b).

[7] D.C. Code § 32-1528(a) (2019 Repl.) additionally authorizes "the trier of fact or court having jurisdiction of proceedings in respect of any claim or compensation order [to] determine[] that the proceedings in respect of such claim or order have been instituted or continued without reasonable ground," and to then assess "the costs of such proceedings . . . against the party who has so instituted or continued such proceedings." Section 32-1528(b) authorizes DOES to order additional payments to employees where it finds the employer is acting "in bad faith" to delay payment of compensation. While those provisions certainly give employers an incentive not to force or prolong litigation of a compensation claim, because they require a showing that the employer either acted unreasonably or in bad faith, they do not render superfluous the automatic, no-fault attorney's fee provision of D.C. Code § 32-1530.

pay compensation that is legitimately due, but also by empowering employees who might not be able to pay for counsel out-of-pocket to hire lawyers to help them vindicate their rights under the statute (thus further dissuading employers from disputing their compensation obligations).[8]

---

[8] As the Majority Opinion rightly observes, this court looks primarily to the text of the statute to discern the legislature's objective. *Ante* at 12-13 (quoting *Nat'l Geographic*, 721 A.2d at 621). But we need not ignore that the legislative history reinforces the plain text in this case. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 754 (D.C. 1983) (en banc) (noting "there is wisely no rule of law forbidding resort to explanatory legislative history no matter how clear the words may appear on superficial examination" (internal quotation marks omitted)).

When the District first considered enacting its own workers' compensation scheme, the Housing and Economic Development Committee wrote the first draft of legislation and proposed, inter alia, departing from the LHWCA and discarding fee-shifting in the D.C. act. *See* Committee Report at 7, 17. In response, the Public Services and Consumer Affairs Committee forcefully defended its inclusion. The Committee explained that "assessing attorney's fees and penalizing insurance companies for not paying valid claims is a method [of] discouraging dilatory action by companies to force an injured employee to settle for less than the statutorily established rate of compensation" and that, without an attorney's fee provision, it would be "extremely difficult for an injured worker to obtain competent counsel." Committee Report at 17. The Committee Report also indicated that ensuring access to counsel by awarding attorney's fees would further promote voluntary compliance by leveling the playing field, noting that employees would be fighting against "the specialized legal counsel the insurance companies hire." *Id.* The Council rejected the omission of fees proposed by the Housing and Economic Development Committee and adopted the Public Services and Consumer Affairs Committee recommendation on fees nearly verbatim. *Compare* Committee Report at 69-73 *with* D.C. Code § 32-1530.

My colleagues in the Majority dismiss these statements as "brief" and "general." *Ante* at 26 n.11. The legislative history speaks for itself.

**II.** **The Majority Opinion lgnores the Plain Language of the Statute and Threatens to Render the Attorney's Fee Provision Entirely Ineffective as an Incentive to Promote Prompt, Voluntary Payment of Worker's Compensation Benefits.**

Having voluntarily paid temporary total disability benefits, *ante* at 34 n.18, the employer in this case did not make voluntary prompt payment of permanent partial disability (PPD) benefits legitimately due. Instead the employer forced Mr. Kelly to litigate his right to these benefits at a formal (and more costly) hearing before a DOES Administrative Law Judge (ALJ).[9] This is precisely the course of action the attorney's fee provision of D.C. Code § 32-1530 is intended to discourage. Nevertheless, the Majority Opinion sees no impediment to denying Mr. Kelly attorney's fees and giving employers total power to neutralize § 32-1530. The Majority Opinion does this by holding that employers can insulate themselves from attorney's fee awards by bypassing informal procedures before OWC to resolve benefits controversies. The Majority Opinion's holding is contrary to the plain language of the statute, is not compelled by our case law, and makes little sense.

---

[9] The employer took the position it owed Mr. Kelly nothing in the way of PPD benefits. The ALJ disagreed and ordered the employer to pay approximately $10,140 in PPD benefits, which the employer then paid by check.

The Majority Opinion asserts that it is "bound" by the plain language of § 32-1530(b), *ante* at 23, which provides that an employer cannot be held liable for an employee's attorney's fees unless the employer has "reject[ed] the [OWC's] written recommendation" regarding any controversy over compensation "within 14 days after its receipt." *Ante* at 21. The Majority Opinion reasons that the employer can only receive and reject "something that actually exists." *Id*. Thus if the OWC recommendation has not come into existence (because the employer bypassed the procedure for its creation), then the employer cannot be liable for attorney's fees.

The flaw in this analysis is that the statute, by its plain language, does not envision a world where the OWC's recommendation does not exist. To the contrary, as the Majority Opinion acknowledges, the preceding sentence of § 32-1530(b) dictates that "[i]f the employer or carrier pays or tenders payment of compensation without an award pursuant to this chapter, and thereafter a controversy develops over the amount of additional compensation, if any, to which the employee may be entitled, *the [OWC] shall recommend in writing a disposition of the controversy*." *Id*. (emphasis added).[10] The statute *then* provides that "[i]f

---

[10]    *See Washington v. District of Columbia*, 137 A.3d 170, 173-74 (D.C. 2016) ("The interpretation of statutes is a holistic endeavor. . . . Inevitably, therefore, in expounding a statute, we must not be guided by a single sentence or

(continued . . .)

the employer . . . refuse[s] to accept such written recommendation," and the employee proceeds to litigate and wins, the employer is liable for attorney's fees. *Id.* In other words, under the plain language of the statute, the OWC's informal resolution of a controversy that arises after voluntary payment may not be bypassed. My colleagues' assertion that the plain language of § 32-1530 compels their holding simply disregards the whole of the statute's plain language.[11] *See*

---

(. . . continued)
member of a sentence, but must look to the provisions of the whole law, and to its object and policy." (internal quotation marks omitted)).

[11] Although the Majority Opinion suggests that Mr. Kelly did not make a plain language argument to this court, *ante* at 20 n.7, Mr. Kelly has argued at every step of this litigation – before DOES, the CRB, and this court – that he is entitled to attorney's fees under the plain language of § 32-1530, including the language that mandates the OWC to issue a written disposition of any controversy.

My colleagues in the Majority further suggest the real problem exposed by this case is that (1) the workers' compensation statute conflicts with the regulations promulgated under that statute, *ante* 19 n.6, 20 n.7 (discussing 7 DCMR §§ 219.2, 219.23), but (2) that conflict has not been properly presented to this court for our resolution. *Id.* Although the statute would control in any such conflict, none exists. As explained above, the plain language of § 32-1530(b) requires the OWC to issue a recommendation where an employee's claim to compensation is controverted by his employer. The regulations do not provide otherwise. 7 DCMR § 219.2 makes participation in informal OWC proceedings voluntary, and thereby gives employers the option of not engaging in those proceedings, but it does not excuse the OWC from fulfilling its statutory obligation to issue a recommendation informally resolving any controversy. Similarly, 7 DCMR § 219.23 provides that an application for a formal hearing terminates all informal procedures thereby, obviating concerns about concurrent jurisdiction, *see Travelers Indem. Co. of Ill. v. District of Columbia Dep't of Emp't Servs.*, 975 A.2d 823, 829 (D.C. 2009), but it does not follow that a litigant may apply for such a hearing at any time, nor does it

(continued . . .)

*Goba v. District of Columbia Dep't of Emp't Servs.*, 960 A.2d 591, 594 (D.C. 2008) ("An interpretation of the statute that nullifies some of its language is neither reasonable nor permissible."); *Providence Hosp. v. District of Columbia Dep't of Emp't Servs.*, 855 A.2d 1108, 1114 (D.C. 2004) ("Each provision of the statute should be given effect, so as not to read any language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute." (internal quotation marks omitted)).

The actual foundation of the Majority Opinion is not the plain language of § 32-1530(b), but rather the decisions of this court. *Ante* at 20-21 (discussing how this court in prior decisions has "construed" § 32-1530(b)); *id.* at 20 n.7 (explaining that "our case law clearly do[es] envision . . . a world" where the OWC does not issue a recommendation to resolve a controversy about benefits due and that Mr. Kelly's argument is foreclosed by "precedent"); *id.* at 24-26 (discussing our case law). My colleagues' reliance on these decisions, however, is misplaced. None of the cases cited address the issue before us or carefully examine the full language of § 32-1530, much less dictate the Majority Opinion's holding that an

---

(. . . continued)
authorize an interested party to request a formal hearing in order to bypass informal procedures mandated by the statute.

employer may insulate itself against an employee's claim for attorney's fees by bypassing informal proceedings before the OWC.

The Majority Opinion principally relies on *National Geographic*, 721 A.2d 618. In that case, we held that an employee could not get an attorney's fee award where he "decline[d]" to use the OWC's informal procedures and "chose to commence formal proceedings," *id.* at 622, thereby depriving the employer of the safe harbor from an attorney's fees award afforded by § 32-1530(b): acceptance of the OWC's recommended resolution for a benefits dispute. But we did not discuss the statutory language mandating that OWC issue an informal resolution of any benefits controversy and instead appeared to accept without question that an employee could opt to go straight to a formal hearing before an ALJ.[12]  721 A.2d at 621-22. *National Geographic* does not resolve the issue presented in this case.

My colleagues in the Majority also rely on *Providence Hospital*, 855 A.2d 1108; *Fluellyn v. District of Columbia Dep't of Emp't Servs.*, 54 A.3d 1156 (D.C. 2012); and *Turner v. District of Columbia Dep't of Emp't Servs.*, 210 A.3d 156

---

[12]  Nonetheless we interpreted the statute in a manner consistent with its purpose to discourage litigation and to promote voluntary and prompt payment of benefits and explained that "[w]hen claimants decline to use that informal procedure in favor of the formal claims procedure, they do so at the risk of increased expense to themselves and to the system." 721 A.2d at 622.

(2019), but no attempt to bypass informal resolution by the OWC was made in any of those cases. In *Providence Hospital* and *Turner*, we held that an employee could not get an award of attorney's fees under § 32-1530(b) where the employer and employee participated in the informal procedures before the OWC but the employee, not the employer, rejected the OWC's recommendation for resolution of the benefits controversy. 855 A.2d at 1114; 210 A.3d at 158, 162. In *Fluellyn*, we held that an employee could not get an award of attorney's fees under § 32-1530(b) where the employer did not force the employee to litigate his entitlement to compensation at a formal hearing because the parties settled after receiving OWC's recommended resolution for the benefits controversy but before the commencement of a formal hearing. 54 A.3d at 1158, 1164. These cases, like *National Geographic*, are examples of how the court has upheld the incentive structure of the worker's compensation statute to encourage employers to make prompt, voluntary benefits payment.[13] They provide no support for the Majority

---

[13] Seeking to counter this point, the Majority Opinion cites *Baghini v. District of Columbia Dep't of Emp't Servs.*, 525 A.2d 1027, 1030 (D.C. 1987), for the proposition that this court has already recognized that the Council meant to limit the availability of attorney's fees. *Baghini* addressed an entirely different issue. When the Council enacted the D.C. Workers' Compensation Act, there was an attempt to get rid of the fee-shifting provisions of the LHWCA requiring employers to pay fees whenever they opt to formally litigate and lose. *See* Committee Report at 17. But it failed. The Council imported the LHWCA fee-shifting provisions into the D.C. act nearly verbatim. The only nod to concern about employer costs regarding attorney's fees was the imposition of a statutory

(continued . . .)

Opinion's holding inverting that incentive structure and encouraging employers to immediately proceed to formal litigation of benefits controversies before a DOES ALJ.[14]

---

cap on fee awards. This was the subject of the litigation in *Baghini*. *Baghini* provides no support, however, for the proposition that the Council meant to limit *access* to employer-paid fees though § 32-1530.

[14] None of the LHWCA cases favorably cited by my colleagues in the Majority Opinion, *ante* at 22 n.8, even contemplate that an employer can unilaterally bypass informal procedures before the OWC analogue, much less hold that an employer can defeat an award of attorney's fees by proceeding directly to formal litigation. (The federal statute specifies both that the OWC analogue "shall" hold an informal conference and thereafter "shall" issue an informal recommendation. 33 U.S.C. § 928.) To the contrary, the federal cases cited by my colleagues support an interpretation of the statute that authorizes fee awards when the employer forces an employee to litigate to get the full benefits to which the employee is entitled, and rejects them when the employer does not do this. *Compare Carey v. Ormet Primary Aluminum Corp.*, 627 F.3d 979, 983 (5th Cir. 2010) (upholding an award of fees where an employer sought informal resolution but then rejected the resulting recommendation, observing that the employer's argument that it was not liable for attorney's fees "border[ed] on frivolous" where the employer "sought a formal hearing" with the aim of "overturn[ing] the director's recommendation through litigation") *with Andrepont v. Murphy Expl. & Prod. Co.*, 566 F.3d 415 (5th Cir. 2009) (upholding the denial of fees under § 928(b) where an informal hearing was held and the employer accepted the recommendation from the informal process); *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253 (6th Cir. 2007) (reversing an award of fees where an informal hearing was held, but no recommendation issued because parties were considering settlement and the claimant apparently did not request that a recommendation issue before initiating formal proceedings); *Virginia Int'l Terminal, Inc. v. Edwards*, 398 F.3d 313 (4th Cir. 2005) (upholding the denial of fees under § 928(b) where an informal hearing was held but the employee aborted the process before the informal recommendation issued).

(continued . . .)

Until now, this court has not confronted a situation where an employer has bypassed an informal resolution of a benefits controversy by the OWC, and then used that maneuver to justify the denial of an attorney's fee award after the employee prevailed at a formal hearing before a DOES ALJ. The plain language of § 32-1530(b) precludes the employer from employing this maneuver. Moreover, this court has previously indicated that it would look with disfavor on an employer who resisted voluntary payment of legitimate benefits claims and then sought to engage in gamesmanship to defeat an attorney's fee award under § 32-1530(a).[15] We thus certainly have the authority to hold that the CRB erred in affirming the denial of attorney's fees and to direct the CRB to remand so that those fees could be awarded. *See Nunnally v. District of Columbia Metro. Police*

---

(. . . continued)

The one exception is *Lincoln v. Dir., Office of Workers' Comp. Programs*, 744 F.3d 911, 915 (4th Cir. 2014), which provides no guidance as to how to interpret § 32-1530(b) because it does not address an award of fees under § 32-1350(b)'s federal analogue. *Id.* (award of fees rejected under § 928(a), not § 928(b)).

[15] *See Goba*, 960 A.2d at 594-95 (indicating that it would be unreasonable to interpret the "decline[d] to pay any compensation" language in § 1350(a) to allow the employer to "evade [attorney's] fee liability for refusing to pay compensation by the simple expedient of remaining silent and failing to decline payment formally," and instead stating "the fact finder should be able to infer that the employer declined to pay because it denied liability" (internal quotation marks omitted)).

*Dep't.*, 80 A.3d 1004, 1010-11 (D.C. 2013) (acknowledging that this court is the final authority on issues of statutory construction and owes no deference to an agency's interpretation of a statute where the plain language is clear).

If we do not reverse outright, we should at the very least remand this case to the CRB to allow it to consider the full language of § 32-1530(b) for the first time. In the decision on review, the CRB did not engage in any meaningful analysis of § 32-1530 or the Workers' Compensation Act as a whole. It largely block-quoted the employer's brief and the ALJ's ruling. Those sources, in turn, did not engage in meaningful statutory analysis; instead they rely on our decisions in *National Geographic* and *Providence Hospital*, even though, as explained, those decisions do not compel the conclusion that the employer should be able to avoid an award of attorney's fees in this case. *See District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 925 (D.C. 2012) (explaining that although we generally defer to an agency's reasonable interpretation of an ambiguous statute, we do not afford such deference to the agency where the agency "did not conduct any analysis of the language, structure, or purpose of the statutory provision" (internal quotation marks omitted)); *Nunnally*, 80 A.3d at 1012 (explaining that we owe no deference to an agency's interpretation of our case law).

The Majority's decision to choose a third path – to depart from the plain language of § 32-1530 in a way that is contrary to the purpose of the statute and is harmful to employees – is untenable. *Cf. Peoples Drug Stores*, 470 A.2d at 754 (acknowledging, inter alia, that "the literal meaning of a statute will not be followed when it produces absurd results," and "whenever possible, the words of a statute are to be construed to avoid obvious injustice" (internal quotation marks omitted)). "Workers' compensation laws are to be liberally construed for the benefit of the employee." *Jimenez v. District of Columbia Dep't of Emp't Servs.*, 701 A2d 837, 840 (D.C. 1997) (internal quotation marks omitted). The Majority Opinion does not adhere to this directive, as my colleagues concede. Although my colleagues incorrectly fault the text of the statute, they agree that their holding may create "a strategic disparity between claimants and employers vis-à-vis the use of informal procedures," making it "strategically ill-advised for a claimant to bypass informal procedures if s/he is ultimately seeking to recover attorney's fees" but "strategically sound for an employer to proceed directly to a formal hearing, as this will remove the employer from the ambit of § 32-1530(b)." *Ante* at 28. Employers can easily exploit this disparity to broadly deprive employees of access to attorney's fees under § 32-1530.

The consequences are predictable. There is no rational reason an employer will not choose to bypass informal proceedings before the OWC and opt instead to litigate an employee's entitlement to benefits in a formal hearing before an ALJ in order to cut off an employee's ability to obtain attorney's fees from her employer. More aggressive litigation tactics will almost certainly be accompanied by offers of lowball settlements or refusals to pay entirely, because employers – who are likely to have counsel and the resources to litigate – will know that that their employees will either be paying for counsel out-of-pocket or fighting for their benefits alone.[16]

---

[16] The Majority notes that "significantly, the nonpayment of attorney's fees does not appear to have compromised [Mr.] Kelly's ability to receive" benefits, and thus "the statutory scheme appears to have operated as it was intended to in this case." *Ante* at 34 n.18. This ignores the record. As soon as the employer requested a formal hearing, Mr. Kelly's counsel contacted the chief ALJ to ensure Mr. Kelly would still be entitled to attorney's fees from the employer if he prevailed, and in the alternative asked that the case be remanded for a recommendation from OWC. Even at this relatively early stage in these proceedings, it was clearly important to Mr. Kelly that attorney's fees paid by the employer would remain available notwithstanding the employer's procedural maneuver; indeed, this may have been crucial to Mr. Kelly's decision or ability to retain counsel in this matter. Because the Majority Opinion affirms a denial of an award of attorney's fees payable by his employer, any obligation to pay the attorney will fall to Mr. Kelly, either out-of-pocket or via a lien on his benefits. *See* § 32-1530(c). From here on, employees like Mr. Kelly who are forced by their employer to fight for their right to benefits will know at the outset that they will have to assume the cost of counsel, and they will act accordingly – in ways that, as explained *supra*, are likely to subvert the goals of the District's workers' compensation scheme.

My colleagues in the Majority respond that "had the parties successfully reached agreement through informal procedures . . . [Mr. Kelly's attorney]

(continued . . .)

Access to attorney's fees under D.C. Code § 32-1530(b) is key to the smooth operation of our worker's compensation scheme: An employee with a strong claim whose employer refuses to pay the compensation due is more likely not to give up and instead to choose to advance to a formal conference, knowing their employer will pay their legal fees; by contrast, an employee with a weak claim will be aware prior to advancing to a formal conference of their obligation to pay their counsel should they lose. Meanwhile, employers are incentivized to settle prior to a formal conference to limit their liability for fees. The fees thus operate as a disincentive to needless litigation. The Majority Opinion upsets this incentive structure to reach a conclusion contrary to the purpose and plain language of the Workers' Compensation Act. For all the reasons discussed above, I respectfully dissent.

---

(. . . continued)

certainly would not have been entitled to recover attorney's fees from Pepco," *ante* at 33 n.16. This argument is not only incorrect, *see* 7 DCMR §§ 224.5, 269.5, but also, more importantly, misses the point that formal proceedings require more attorney time and are more expensive, thus making it imperative for employers to shoulder the cost when they have bypassed informal proceedings.